## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

STEVE WILLIAMSON,
On Behalf of Himself and All Others
Similarly Situated,

       Plaintiffs,

v.

SA GEAR COMPANY, INC.,
AUTOZONE, INC.,
AUTOZONE PARTS, INC., and
AUTOZONE STORES, INC.,

       Defendants.

Case No. 3:15-cv-365

**CLASS ACTION**

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

COME NOW Steve Williamson, individually and on behalf of all similarly situated persons, and for their Class Action Complaint, state as follows, upon information and belief:

1.    This is a Class Action seeking money damages and other redress arising from the purchase price paid by Plaintiffs and the Class for a certain mechanical automobile part manufactured, marketed, distributed, and/or sold by Defendants S.A. Gear Company, Inc., AutoZone, Inc., AutoZone Parts, Inc. and/or AutoZone Stores, Inc. under various trade names.

2.    Unbeknownst to Plaintiffs and the Class, this part, while intended and marketed for use as a replacement part in a certain Chrysler engine, instead was defective, prone to failure, and otherwise unsuitable for such use. Defendants failed to disclose that the part was defective in such a manner. Instead, Defendants knowingly sold and or promoted the defective part into the stream of interstate commerce, knowing consumers would widely install such part into their automobiles across the United States.  Due to Defendants' misrepresentations and concealment

1

of material information regarding the part, its defects, and its propensity to fail, Defendants' products were not appropriate for their intended and marketed use as replacement parts, and were not worth the purchase price paid by Plaintiffs and the Class. As a result thousands of American consumers and other purchasers across the country did not receive the benefit of their bargain and were damaged, not only by virtue of the loss of the purchase price, but also from loss, damages, and harm resulting to the vehicles in which the part was installed.

## I.     PARTIES.

3.     Defendant S. A. Gear Company, Inc. ("S.A. Gear") is a corporation organized under the laws of the State of Illinois and having its principal place of business at 7252 W 66th Street, Chicago IL 60638. S.A. Gear's registered agent is George M. Pearce, 131 S. Dearborn St. 30th Floor, Chicago IL 60603.

4.     Defendant AutoZone, Inc. is a corporation organized under the laws of the State of Nevada and having its principal place of business at 123 South Front Street, Memphis, Tennessee 38103. AutoZone, Inc.'s registered agent is The Corporation Trust Company of Nevada, 311 S. Division St., Carson City, NV 89703.

5.     Defendant AutoZone Stores, Inc. is a corporation organized under the laws of the State of Nevada and having its principal place of business at 123 South Front Street, Memphis, Tennessee 38103. AutoZone Stores, Inc.'s registered agent is The Corporation Trust Company of Nevada, 311 S. Division St., Carson City, NV 89703.

6.     Defendant AutoZone Parts, Inc. is a corporation organized under the laws of the State of Nevada and having its principal place of business at 123 South Front Street, Memphis, Tennessee 38103. AutoZone Parts, Inc.'s registered agent is The Corporation Trust Company of Nevada, 311 S. Division St., Carson City, NV 89703.

7.     Defendants AutoZone, Inc., AutoZone Stores, Inc., and AutoZone Parts, Inc. will hereinafter be collectively referred to as "AutoZone."

8.     Plaintiff Steve Williamson is a domiciliary and citizen of the State of Illinois, County of Madison. Plaintiff Williamson purchased and installed Defendants' part in the State of Illinois, county of St. Clair.

## II.     VENUE AND JURISDICTION.

9.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 and the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d)(2).  The matter in controversy in this class action exceeds $5,000,000 exclusive of interest and costs, and some members of the class are citizens of state other than the states in which at least one Defendant is incorporated and has its primary place of business.

10.     Venue is proper pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to this action occurred in this District.

11.     As a result of Defendants designing, manufacturing, marketing, distributing, promoting, and/or selling the part in question, either directly or through third parties, Defendants obtained the benefits of the laws of Illinois and profited from Illinois commerce.

12.     Defendants have conducted systematic and continuous business activities in and throughout the state of Illinois and otherwise intentionally availed themselves of the market in Illinois through the marketing, distributing, promotion, and/or sales of their products.

## III.     FACTS COMMON TO ALL COUNTS

### A.     BACKGROUND: DEFENDANTS' PUBLIC REPRESENTATIONS

3

13.     Defendant S.A. Gear purports to have been manufacturing timing components since 1986.  It boasts that its "factory and warehouse is 70,000 sq ft. on 4 acres in the prime manufacturing district of Chicago."

14.     Defendant S.A. Gear claims to be ISO 9001 certified and claims that it "manufactures timing sprockets, gears, and chains for the automotive aftermarket.  We have a full line of timing components to cover domestic, foreign, and performance applications."

15.     Defendant AutoZone touts itself as "the leading retailer and a leading distributor of automotive replacement parts and accessories in North America."  As of 2013, AutoZone claimed to have 5,201 stores, 9 Distribution centers, and more than 71,000 "AutoZoners," as it terms its employees.

16.     AutoZone claims through its Chairman, President, and CEO Bill Rhodes that "[s]ince our inception in 1979, the key operating principles identified by our founders have continuously guided us.  Those principles include clean, well-lit, well-merchandized stores with AutoZoners who provide exceptional service and trustworthy advice."  Autozone continues: "The last part about AutoZoners continues to be our key point of differentiation, and that is why we are so fanatical about our culture.  Our culture, where we dress alike, routinely and enthusiastically perform our Cheer and Pledge, recognize contributions, large or small, of fellow AutoZoners and put our customers first in everything we do, is our secret weapon!"

17.     As Mr. Rhodes indicates, AutoZone has a Pledge.  Autozone's Pledge is:

> AutoZoners always put customers first!
> We know our parts and products.
> Our stores look great!
> We've got the right merchandise at the right price.

18.     AutoZone further promises the consuming public: "AutoZone offers thousands of parts and accessories in our stores, but the best product we offer is our Trustworthy Advice [sic].

4

. . . Our stores have friendly, knowledgeable AutoZoners who are glad to help you find the right merchandise at the right price." Indeed, as of 2013, Mr. Rhodes himself believed that "[O]ur AutoZoners continue to do a great job of delivering Trustworthy Advice [sic] to our customers."

**B.    BACKGROUND: THE CHRYSLER LH ENGINE**

19.    At certain times, Chrysler Corporation/Chrysler Group LLC and related entities (principally Dodge) manufactured and/or included in certain vehicle types a 2.7 liter V6 engine, commonly known as the Chrysler LH engine (the "Engine").

20.    Makes and models of vehicles containing the Engine (the "Vehicles") included:

- 1998-2001 Chrysler 300M (Europe)
- 1998–2004 Chrysler Concorde
- 1998–2004 Dodge Intrepid/Chrysler Intrepid
- 2001–2006 Dodge Stratus sedan
- 2005–2008 Dodge Magnum SE
- 2001–2010 Chrysler Sebring convertible and sedan
- 2005–2010 Chrysler 300
- 2006–2010 Dodge Charger SE (2006 fleet models only)
- 2008–2010 Dodge Avenger
- 2002–2004 Chrysler Intrepid (Canada)
- 2009–2010 Dodge Journey (non-US markets)

**C.    DEFENDANTS' STATEMENTS, REPRESENTATIONS, AND WARRANTIES REGARDING THE PART**

21.    Defendants S.A. Gear and AutoZone manufacture, distribute, advertise, promote, and/or sell automobile parts to the public, including parts alleged to be appropriate for use with the Engine.

22.    Specifically, Defendants manufacture, distribute, advertise, and/or sell a specific timing chain tensioner (the "Part") that is the subject of this litigation. The Part may be sold or

distributed under the mark of S.A. Gear, Duralast, or otherwise. The Part is often referred to by Defendants as Part Number 9422.[1]

23.   Defendants, and each of them, have made numerous statements, representations, and warranties as to the quality, purpose, and appropriateness of the part for use in certain engines, including the Engine. All of these statements, representations, and warranties, were false and misleading to consumers, Plaintiff, and the Class.

24.   S.A. Gear states, represents, and warrants in writing and/or orally that "Our quality meets or exceeds all OEM specifications."

25.   S.A. Gear states, represents, and warrants in writing and/or orally that the Part can be used as a timing chain tensioner in the Engine and, at a minimum, specifies in each of the following vehicles/engines appropriate for such application ("Fitment Representations"):

- Chrysler Concorde OEM 2000-2001: 2.7L V6 166 R,U,V DOHC
- Chrysler Concorde OEM 2002-2004: 2.7L V6 166 R,U,V DOHC
- Chrysler Sebring OEM 2001-2005: 2.7L V6 166 R,U,V DOHC
- Chrysler Sebring OEM 2006-2007: 2.7L V6 166 R DOHC
- Chrysler 300 OEM 2005-2007: 2.7L V6 166 R,U,V DOHC
- Chrysler 300, Sebring OEM 2008-2010: 2.7L V6 166 R, D
- Dodge Intrepid OEM 2000-2001: 2.7L V6 166 R,U,V DOHC
- Dodge Intrepid OEM 2002-2004: 2.7L V6 166 R,U,V DOHC
- Dodge Stratus OEM 2001-2004: 2.7L V6 166 R,U,T DOHC
- Dodge Charger, Magnum, Stratus OEM 2005-2007:  2.7L V6 166 R,T DOHC
- Dodge Magnum OEM 2008: 2.7L V6 166 T
- Dodge Avenger, Charger OEM 2008-2010: 2.7L V6 166 R,D

26.   S.A. Gear states, represents, and warrants in writing and/or orally that the Part has, at a minimum, the following "Competitor/OEM Interchange[s]" ("Equivalence Representations"):

---

[1] On information and belief, at least one of the OEMs (Original Equipment Manufacturer) for timing chain tensioners used in the Engine as supplied by Chrysler or approved by Chrysler for aftermarket use in the Engine is Cloyes Gear & Products, Inc. ("Cloyes"), which assigns number 9-5422 to its timing chain tensioner.

6

- Carquest 9930
- Chrysler 4792443AB
- Cloyes 9-5422
- Engine Pro 9422
- Mahle-Clevite 9-5422
- Melling BT506
- Melling BT507
- PBM T5422
- PCI T-66507

27.   AutoZone states, represents, and warrants in writing and/or orally that the Part "is precision machined with high grade material for greater strength and durability."

28.   AutoZone states, represents, and warrants in writing and/or orally that the Part "meets or exceeds O.E.M. specifications in manufacturing and material."

29.   AutoZone also states, represents, and warrants in writing and/or orally that the "Item Grade" of the Part is "OEM Standard."

30.   AutoZone states, represents, and warrants in writing and/or orally that the Part "[m]aintains excellent chain or belt tension."

31.   In its written and/or oral representations regarding "Vehicle Fitment," AutoZone states, represents, and warrants that the Part can be used as a timing chain tensioner in the Engine and, at a minimum, specifies each of the following vehicles/engines for such application (additional "Fitment Representations"):

- Chrysler 300 2005:  6 Cylinders R 2.7L MFI DOHC (2969101)
- Chrysler 300 2006:  6 Cylinders R 2.7L SFI DOHC (3024701)
- Chrysler 300 2007:  6 Cylinders R 2.7L SFI DOHC (3132501)
- Chrysler Concorde 2000:  6 Cylinders R 2.7L SFI DOHC (2572101)
- Chrysler Concorde 2001:  6 Cylinders R 2.7L SFI DOHC (2627101)
- Chrysler Concorde 2002:  6 Cylinders R 2.7L SFI DOHC (2718301)
- Chrysler Concorde 2003:  6 Cylinders R 2.7L SFI DOHC (2858501)
- Chrysler Concorde 2004:  6 Cylinders R 2.7L MFI DOHC (2912001)
- Chrysler Intrepid (Can) 2000:  6 Cylinders R 2.7L FI (Can) (2827301)
- Chrysler Intrepid (Can) 2001:  6 Cylinders R 2.7L FI (Can) (2827401)
- Chrysler Intrepid (Can) 2002:  6 Cylinders R 2.7L FI (Can) (3077201)
- Chrysler Sebring 2001:  6 Cylinders U 2.7L SFI DOHC (2627405)

- Chrysler Sebring 2002:  6 Cylinders R 2.7L SFI DOHC (2718406)
- Chrysler Sebring 2003:  6 Cylinders R 2.7L MFI (2864203); 6 Cylinders T 2.7L Flex Fuel DOHC (2864204)
- Chrysler Sebring 2004:  6 Cylinders R 2.7L SFI DOHC (2912405); 6 Cylinders T 2.7L Flex Fuel DOHC (2912404)
- Chrysler Sebring 2005:  6 Cylinders R 2.7L SFI DOHC (2997704); 6 Cylinders T 2.7L Flex Fuel DOHC (2997703)
- Chrysler Sebring 2006:  6 Cylinders R 2.7L SFI DOHC (3030402); 6 Cylinders T 2.7L Flex Fuel DOHC (3030403)
- Chrysler Sebring 2007:  6 Cylinders 2.7L MFI DOHC (3129805); 6 Cylinders R 2.7L Flex Fuel DOHC (3129804)
- Chrysler Sebring Convertible 2001:  6 Cylinders U 2.7L SFI DOHC (2627502)
- Chrysler Sebring Convertible 2002:  6 Cylinders R 2.7L SFI DOHC (2718502)
- Chrysler Sebring Convertible 2003:  6 Cylinders R 2.7L MFI (2864302); 6 Cylinders T 2.7L Flex Fuel DOHC (2864303)
- Chrysler Sebring Convertible 2004:  6 Cylinders R 2.7L SFI DOHC (3206402)
- Chrysler Sebring Convertible 2005:  6 Cylinders R 2.7L SFI DOHC (3206502)
- Chrysler Sebring Convertible 2006:  6 Cylinders R 2.7L SFI DOHC (3206601)
- Dodge Charger 2006: 6 Cylinders R 2.7L SFI DOHC (3022804)
- Dodge Charger 2007: 6 Cylinders R 2.7L SFI DOHC (3133901)
- Dodge Intrepid 2000: 6 Cylinders R 2.7L SFI DOHC (2588501); 6 Cylinders U 2.7L SFI DOHC (2588504)
- Dodge Intrepid 2001: 6 Cylinders R 2.7L SFI DOHC (2625402); 6 Cylinders U 2.7L SFI DOHC (2625401)
- Dodge Intrepid 2002: 6 Cylinders R 2.7L SFI DOHC (2719601)
- Dodge Intrepid 2003: 6 Cylinders R 2.7L SFI DOHC (2856602)
- Dodge Intrepid 2004: 6 Cylinders R 2.7L SFI DOHC (2912501)
- Dodge Magnum 2WD 2005: 6 Cylinders T 2.7L MFI DOHC (2969601)
- Dodge Magnum 2WD 2006: 6 Cylinders T 2.7L MFI DOHC (3017601)
- Dodge Magnum 2WD 2007: 6 Cylinders T 2.7L MFI DOHC (3134401)
- Dodge Stratus 2001: 6 Cylinders U 2.7L SFI DOHC (2625307)
- Dodge Stratus 2002: 6 Cylinders R 2.7L SFI DOHC (2719807)
- Dodge Stratus 2003: 6 Cylinders R 2.7L MFI (2856807); 6 Cylinders T 2.7L Flex Fuel DOHC (2856808)
- Dodge Stratus 2004: 6 Cylinders R 2.7L SFI DOHC (2912903); 6 Cylinders T 2.7L Flex Fuel DOHC (2912902)
- Dodge Stratus 2005: 6 Cylinders R 2.7L SFI DOHC (2997803); 6 Cylinders T 2.7L Flex Fuel DOHC (2997804)
- Dodge Stratus 2006: 6 Cylinders R 2.7L SFI DOHC (3030502); 6 Cylinders T 2.7L Flex Fuel DOHC (3030503)

32.     AutoZone further states, represents, and warrants, in writing and/or orally, that "Part Number 9-5422" is an alternate for the Part (additional "Equivalence Representations").

**D.     DEFENDANTS'     STATEMENTS,     REPRESENTATIONS,     AND WARRANTIES ABOUT THE PART WERE FALSE AND MISLEADING**

33.     The foregoing statements, representations, and warranties by Defendants regarding the Part are false and misleading.

34.     The Part does not meet or exceed OEM specifications in manufacturing and material, a fact that Defendants, and each of them, fraudulently and knowingly misrepresented and/or willfully concealed from the consuming public.

35.     The item grade of the Part is not OEM Standard, a fact that Defendants, and each of them, fraudulently and knowingly misrepresented and/or willfully concealed from the consuming public.

36.     The Part is not precision machined with high grade material for greater strength and durability, a fact Defendants, and each of them, fraudulently and knowingly misrepresented and/or willfully concealed from the consuming public.

37.     The Part does not maintain excellent chain or belt tension, a fact that Defendants, and each of them, fraudulently and knowingly misrepresented and/or willfully concealed from the consuming public.

38.     Defendants' Fitment Representations are all false.  The Part does not fit properly in the engines specified in the Fitment Representations, or in any Engine at all.  Defendants, and each of them, fraudulently and knowingly misrepresented and/or willfully concealed these facts from the consuming public.

39.     Defendants' Equivalence Representations are also all false.  The Part is not equivalent, interchangeable, fungible, or alternate to OEM parts, competitor parts, or the parts

9

specified in the Equivalence Representations.  Defendants, and each of them, fraudulently and knowingly misrepresented and/or willfully concealed these facts from the consuming public.

40.     In fact, when properly installed and used as intended, the Part causes damage to the Engine, including but not limited to loss of pressure, timing chain chatter, and/or catastrophic engine failure.  Defendants, and each of them, fraudulently and knowingly misrepresented and/or willfully concealed these facts from the consuming public.

41.     Furthermore, the Engine is an interference engine.  An interference engine is a type of 4-stroke internal combustion piston engine in which one or more valves in the fully open position extend(s) into an area into which the piston may travel.  The main advantage of an interference engine is that it allows engine designers to maximize the engine's compression ratio. However, such engines risk major internal damage if the piston strikes the valve(s) due to failure of the timing components, including the timing tensioner.

42.     Accordingly, in the case of failure or defect of the Part at issue in this litigation, such major damage to the Engine was utterly foreseeable.

43.     Any and all defects in the Part were present in the Part at the time the Part was in Defendants' care, custody, and control.

44.     In selecting and/or purchasing the Part for use in their Vehicles, Plaintiff and the Class members relied on the Fitment Representations, Equivalence Representations, and/or Defendants' superior knowledge and information when selecting and purchasing the Part for use in the Engine.

45.     Plaintiff Steve Williamson gave notice to all Defendants of the problem with the Part, orally or in writing.  Defendants refused to cure and refused to provide Plaintiff Steve Williamson complete relief.

46.     All Class Members or Sub-Class Members similarly gave notice to Defendants, or were excused from doing so.

## IV.     TOLLING OF THE STATUTE OF LIMITATIONS

47.     Defendants' fraudulent and wrongful behavior occurred nationwide, and did not stop at the borders of the state of Plaintiff included in this action. The filing of this class action complaint serves to toll and preserve the claims of the various Classes and sub-class members and other purchasers who were defrauded by Defendants' wrongful and unlawful acts, and the commencement of this action suspends the applicable statute of limitations as to all asserted members of the various Classes and sub-classes who would have been parties had the suit been permitted to continue as a class action.

48.     Defendants' at all relevant times knew or should have known of the problems and defects with the Part, and the falsity and misleading nature of Defendants' statements representations, and warranties with respect to the Part.  Defendants concealed and failed to notify Plaintiff, the Class members, and the public of such defects.

49.     Any applicable statute of limitation has therefore been tolled by Defendants' knowledge, active concealment, and denial of the facts alleged herein, which behavior is ongoing.

## V.     CLASS ACTION ALLEGATIONS.

50.     Under Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of himself and a Class initially defined as follows:

> All persons in the United States who purchased Defendants' timing chain tensioner for use in the engine commonly known as the Chrysler LH Engine at any time prior to October 2, 2014.

51.     In instances where multiple states' laws apply to any of Plaintiffs' representative claims, Plaintiff also brings this action on behalf of a subclass ("Multi-State Class") of the foregoing Class, namely for Class Members located in states where vertical privity is not required, and thus is defined as follows:

> All persons who purchased Defendants' timing chain tensioner for use in the engine commonly known as the Chrysler LD Engine at any time prior to October 2, 2014, and who are residents of states that do not require vertical privity to assert express warranty and/or implied warranty claims, including: Alaska, Arkansas, Delaware, District of Columbia, Hawaii, Illinois, Indiana, Kansas, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, North Dakota, Oklahoma, Pennsylvania, Rhode Island, South Carolina, Texas, Utah, West Virginia, Wyoming, and other such states as may appear ("Multi-State Class").

52.     In the further alternative, and as a further separate subclass ("Illinois Class"), Plaintiff also brings this action on behalf of purchasers who are domiciliary citizens of the state of Illinois and who purchased the Part at any time prior to October 3, 2012, this subclass being defined as follows:

> All domiciliary citizens of the state of Illinois who purchased Defendants' timing chain tensioner for use in a Chrysler LH Engine at any time prior to October 3, 2012.

53.     Excluded from the Class are the Defendants, any parent, subsidiary, affiliate, or controlled person of Defendants, as well as the officers, directors, agents, servants, or employees of Defendants, and the immediate family member of any such person.  Also excluded is any trial judge who may preside over this cause.  Damages sought to be recovered by any judgment pursuant to this class action do not include damages for personal injury.

54.     Plaintiff is a member of the Class and will fairly and adequately assert and protect the interests of the Class. The interests of the Plaintiff are coincident with, and not antagonistic to, those of other members of the Class. Plaintiff has retained attorneys who are experienced in class action litigation.

12

55.     Members of the Class are so numerous that joinder of all members is impracticable. Upon information and belief, there may be hundreds of members of the Class in the state of Illinois alone.

56.     Common questions of law or fact predominate over any questions affecting only individual members of the Class. Common questions include, but are not limited to, the following:

a.      Whether the Defendants engaged in marketing and promotional activities which were likely to deceive purchasers, by omitting, suppressing, and/or concealing the fact that Defendants' Part was not suitable for use as a timing chain tensioner in the Engine;

b.      Whether the Defendant omitted, suppressed, and/or concealed material facts concerning its Part from Plaintiff and the Class;

c.      What the fair market value of Defendants' Part would have been throughout the class period but for the Defendants' and its employees and agents' omissions, suppressions, and/or concealments concerning the use and properties of the Part;

d.      Whether the prices which the Defendants charged for the Part throughout the class period exceeded the fair market value the products would have had for use as a timing chain tensioner in the Engine but for the Defendants' omissions, suppressions, and/or concealments;

e.      Whether the Plaintiffs and the Class were deprived of the benefit of the bargain in purchasing Defendants' Part;

f.      Whether the excessive prices that the Defendants charged were in violation of state consumer fraud statutes and/or unfair trade practices acts;

g.      Whether the Defendants' unconscionable actions occurred in connection with the Defendants' conduct of trade and commerce;

h.      Whether the Defendants' omissions, suppressions, and/or concealments of the defects of Defendants' Part allowed Defendants to charge unfair or unconscionable prices for the Part;

i.    Whether the Defendants were unjustly enriched at the expense of the Class members;

j.    Whether the Defendant's conduct was intentional, in bad faith, willful and wanton, or in reckless and conscious disregard of the rights of Plaintiff and the Class; and

k.    Whether the Class has been damaged and, if so, the extent of such damages.

57.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class; and adjudication with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of other members that are not parties to the adjudication or substantially impair or impede their ability to protect their interests.

58.    The class action method is appropriate for the fair and efficient prosecution of this action. Individual litigation of all claims which might be assessed by all Class Members would produce such a multiplicity of cases that the judicial system having jurisdiction over the claims would remain highly congested. Class treatment, by contrast, provides manageable judicial treatment calculated to bring a rapid conclusion to all litigation of all claims arising as a result of the aforementioned wrongful and illegal conduct of the Defendant.

59.    Furthermore, on information and belief, the individual units of Defendants' Part sold for approximately $65 to 70 per unit, and many class members are likely to have purchased only a small number of units. Therefore, certification of a Class would allow litigation of claims that, in view of the expense of the litigation, may be insufficient in amount to support separate actions.

## VI.    CAUSES OF ACTION

### COUNT I

### VIOLATION OF MAGNUSSON-MOSS WARRANTY ACT

14

## 15 U.S.C. § 2301 et seq. ("MMWA")

60.      Plaintiffs repeat and re-allege the allegations set forth in the foregoing paragraphs above as if fully set forth herein.

61.      At all times relevant hereto, there was in full force and effect the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, et seq. ("MMWA").

62.      The Part is a consumer product within the meaning of 15 U.S.C. § 2301(1).

63.      Plaintiffs and all Class or sub-Class members are consumers as defined in 15 U.S.C. § 2301(3).  They are consumers because they are persons entitled under applicable state law to enforce against the warrantors the obligations of their express and implied warranties.

64.      Defendants, and each of them, are suppliers and warrantors within the meaning of 15 U.S.C. §§ 2301(4), (5).

65.      Pursuant to 15 U.S.C. § 2310(e), Plaintiff is entitled to  bring this class action and is not required to give Defendants or any of them notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiff pursuant to Rule 23 of the Federal Rules of Civil Procedure.

66.      In connection with the sale of the Part, Defendants gave multiple written warranties as defined in 15 U.S.C. 2301(6), including but not limited to the written warranties enumerated in the foregoing incorporated paragraphs.

67.      In connection with the sale of the Part, Defendants gave multiple implied warranties as defined in 15 U.S.C. § 2301(7), included but not limited to the implied warranty of merchantability and the implied warranty of fitness for a particular purpose.  As a part of the implied warranty of merchantability, Defendants warranted that the Part was fit for its ordinary purpose as a timing chain tensioner, would pass without objection in the trade as designed,

manufactured and marked, and were adequately contained, packaged, and labeled.  As part of the implied warranty of fitness for a particular purpose, Defendants warranted that the Part was suitable for use as a timing chain tensioner in the Engine and/or specified engines as set forth in the incorporated allegations.

68.     Defendants are liable to Plaintiffs and the Nationwide, Multi-State Class and State-Wide Subclass members pursuant to 15 U.S.C. § 2310(d)(1), because they breached all written warranties and all implied warranties, including implied warranties of merchantability and implied warranties of fitness for a particular purpose.

69.     Specifically, but without limitation, among the express warranties Defendants breached were that the Part is precision machined with high grade material for greater strength and durability; that the Part meets or exceeds OEM specifications in manufacturing and material; that the Part is OEM standard; that the Part maintains excellent chain or belt tension; and/or that the Part will fit and operate as intended in the Engine or in any of the engines specifically listed in the Fitment Representations.

70.     In much the same vein and for many of the same reasons and circumstances of material fact, Defendants have breached all implied warranties, including the implied warranty of merchantability.  The Part is not fit for the ordinary purpose for which it is used, namely as a timing chain tensioner in the Engine.  When installed in the Engine, the Part would cause damage, loss, and harm, including but not limited to timing chain chatter, loss of pressure, and/or catastrophic engine failure.  This defect makes the Part unfit for its ordinary purpose.

71.     Defendants also breached the implied warranty of merchantability as the Part would not pass without objection in the trade, for a variety of separate and independent inadequacies, including the Part's defects and propensity to cause loss and harm, as well as its

false labeling, e.g. "OEM." The Part cannot pass in the trade as suitable or as OEM given these defects, deficiencies, and falsehoods.

72.     Again similarly, the Part breached the implied warranty of merchantability as being inadequately and improperly contained, packaged, and labeled. The Part was packaged and labeled as being suitable for use in the Engine, when it is not. Rather, it causes harm and damage to the Engine. Furthermore, the Part is labeled as OEM or as adhering to OEM specifications, when it does not. These deficiencies and falsehoods, and others as incorporated herein, breach the implied warranty of merchantability.

73.     As the proximate cause and legal result of the breach of the aforementioned warranties regarding the Part as manufactured and/or supplied and/or distributed by Defendants and as a direct and legal result of the conduct of Defendants described herein, Plaintiff and the Class have been damaged directly, incidentally, and consequentially, including but not limited to the price paid for the Part, and the damage to the Engines and the Vehicles of the Plaintiff and the Class.

WHEREFORE, Plaintiffs and the Class pray that the Court: (1) order that this action be certified and maintained as a class action; (2) enter judgment in favor of Plaintiffs and the Class and against Defendant; and (3) award Plaintiffs and the Class compensatory damages, punitive damages, costs of suit, and reasonable attorney's fees in an amount to be determined at trial.

### COUNT II

### BREACH OF EXPRESS WARRANTIES (UCC § 2-313; 810 ILCS 5/2-313)

74.     Plaintiffs repeat and re-allege the allegations set forth in the foregoing paragraphs above as if fully set forth herein.

75.     Defendants made several affirmations of fact and promises with respect the Part, including but not limited its specifications, quality, proper uses, Fitment Representations, and Equivalence Representations.   These affirmations of fact and promises, and each of them, became a part of the basis of the bargain with Plaintiff and the Class members.

76.     Said affirmations of fact and promises, and each of them, were false.

77.     Consumers and members of the public, including, but not limited to Plaintiff and the Class, reasonably relied upon the skill and judgment of Defendants and upon said express warranties in choosing the Part for purchase and use.

78.     Defendants expected consumers and members of the public, including Plaintiff and the Class, to rely on Defendants' express warranties when purchasing and using the Part.

79.     As the proximate cause and legal result of the breach of the aforementioned warranties regarding the Part as manufactured and/or supplied and/or distributed by Defendants and as a direct and legal result of the conduct of Defendants described herein, Plaintiff and the Class have been damaged directly, incidentally, and consequentially, including but not limited to the price paid for the Part and the damage to the Engines and the Vehicles of the Plaintiff and the Class.

WHEREFORE, Plaintiffs and the Class pray that the Court: (1) order that this action be certified and maintained as a class action; (2) enter judgment in favor of Plaintiffs and the Class and against Defendant; and (3) award Plaintiffs and the Class compensatory damages, punitive damages, costs of suit, and reasonable attorney's fees in an amount to be determined at trial.

## COUNT III

## BREACH OF IMPLIED WARRANTY – MERCHANTABILITY (U.C.C. § 2-314; 810 ILCS 5/2-314)

80.     Plaintiffs repeat and re-allege the allegations set forth in the foregoing paragraphs above as if fully set forth herein.

81.     Defendants purported to design, manufacture, market, distribute, supply and sell the Part for use as a timing chain tensioner in the Engine, and as such, are merchants with respect to the Part.

82.     At the time that Defendants manufactured, marketed, distributed, supplied, and/or sold the Part, they knew of the use for which the Part was intended and impliedly warranted it to be of merchantable quality and safe and fit for such use.

83.     At the time that Defendants manufactured, marketed, distributed, supplied, and/or sold the Part, they knew of the use for which the Part was intended and impliedly warranted it to be of merchantable quality and as safe and fit for such use as a timing chain tensioner in the Engine.

84.     Plaintiff and the Class members reasonably relied upon the skill, superior knowledge and judgment of Defendants in selecting and purchasing the Part for use as a timing chain tensioner in the Engine.

85.     Plaintiff and the Class members purchased and used the Part for its intended purpose.

86.     Contrary to the implied warranty for the Part, the Part was not of merchantable quality, and was proper for its intended use as a timing chain tensioner in the Engine, but rather, caused or threatened to cause loss, harm, and damage to the Engine.

87.     As the proximate cause and legal result of the breach of the aforementioned warranties regarding the Part as manufactured and/or supplied and/or distributed by Defendants and as a direct and legal result of the conduct of Defendants described herein, Plaintiff and the

Class have been damaged directly, incidentally, and consequentially, including but not limited to the price paid for the Part, and the damage to the Engines and the Vehicles of the Plaintiff and the Class.

WHEREFORE, Plaintiffs and the Class pray that the Court: (1) order that this action be certified and maintained as a class action; (2) enter judgment in favor of Plaintiffs and the Class and against Defendant; and (3) award Plaintiffs and the Class compensatory damages, punitive damages, costs of suit, and reasonable attorney's fees in an amount to be determined at trial.

## COUNT IV

### BREACH OF IMPLIED WARRANTY – FITNESS FOR A PARTICULAR PURPOSE
### (UCC § 315; 810 ILCS 5/2-315)

88.    Plaintiffs repeat and re-allege the allegations set forth in the foregoing paragraphs above as if fully set forth herein.

89.    Defendants purported to design, manufacture, market, distribute, supply and sell the Part for use as a timing chain tensioner in the Engine.

90.    At the time that Defendants manufactured, marketed, distributed, supplied, and/or sold the Part, they knew of the use for which the Part was intended and impliedly warranted it to be of merchantable quality and safe and fit for such use.

91.    At the time that Defendants manufactured, marketed, distributed, supplied, and/or sold the Part, they knew of the use for which the Part was intended and impliedly warranted it to be of merchantable quality and as safe and fit for such use as a timing chain tensioner in the Engine.

92.    Plaintiff and the Class members reasonably relied upon the skill, superior knowledge and judgment of Defendants in selecting and purchasing the Part for use as a timing chain tensioner in the Engine.

93.     Plaintiff and the Class members purchased and used the Part for its intended purpose.

94.     Contrary to the implied warranty for the Part, the Part was not of merchantable quality, and was proper for its intended use as a timing chain tensioner in the Engine, but rather, caused loss, harm, and damage to the Engine.

95.     As the proximate cause and legal result of the breach of the aforementioned warranties regarding the Part as manufactured and/or supplied and/or distributed by Defendants and as a direct and legal result of the conduct of Defendants described herein, Plaintiff and the Class have been damaged directly, incidentally, and consequentially, including but not limited to the price paid for the Part and the damage to the Engines and the Vehicles of the Plaintiff and the Class.

WHEREFORE, Plaintiffs and the Class pray that the Court: (1) order that this action be certified and maintained as a class action; (2) enter judgment in favor of Plaintiffs and the Class and against Defendant; and (3) award Plaintiffs and the Class compensatory damages, punitive damages, costs of suit, and reasonable attorney's fees in an amount to be determined at trial.

**COUNT V**

**VIOLATION OF ILLINOIS CONSUMER FRAUD AND
DECEPTIVE BUSINESS PRACTICES ACT (815 ILCS 505/1 et seq.)**

COMES NOW Plaintiff, individually and on behalf of all others similarly situated, and for Count II of their Complaint against Defendant state as follows:

96.     Plaintiffs re-allege and incorporate the allegations contained in the foregoing paragraphs as if fully set out herein.

97.     This Count is brought pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq.

98. Plaintiff and the Class are persons as defined by the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1(c).

99. The Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2 provides as follows:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact… in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

100. The Illinois Consumer Fraud and Deceptive Business Practices Act further provides in 815 ILCS 505/10(a) as follows:

> Any person who suffers actual damages as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion may award actual economic damages or any other relief which the court deems proper.

101. As described herein, Defendants' misconduct, material misstatements and omissions, and unfair, unethical and unscrupulous conduct, which occurred in the course of conduct involving trade or commerce, are unlawful. Defendants engaged in wrongful conduct while at the same time obtaining, under false pretenses, significant sums of money, including money from Plaintiffs and the Class.

102. Defendant's unlawful acts in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act include the following:

a. Omitting, suppressing, and/or concealing the material fact that the Defendants' Part was not suitable for use as a timing chain tensioner in the Engine;

b. Omitting, suppressing, and/or concealing the material fact that Defendants' Part would cause damage or harm to the Engine when used as a timing chain tensioner in the Engine;

c. Affirmatively misrepresenting to purchasers, including through their statements, affirmations of fact, promises, package labeling, advertising, and other means,

22

that the Part was appropriate and proper for use as a timing chain tensioner in the Engine, despite the fact that it was inappropriate and improper for such use;

d.  Failing to alert the public and purchasers at any time regarding the dangers arising from use of the Part as a timing chain tensioner in the Engine; and

e.  Unlawfully promoting and marketing the Part without warning and without disclosing these material facts to purchasers.

103.  Plaintiffs and the Class were deceived and suffered actual damages in violation of 815 ILCS 505/2 when they paid full price for Defendants' Part, which was in fact not suitable for use as a timing chain tensioner in the Engine.

104.  Defendant intended that Plaintiff and the Class rely on their unfair and materially deceptive practices.

105.  Furthermore, Defendants' conduct as set forth above, including Defendants self-dealing, misrepresentations and material omissions intended to benefit Defendants at the expense of Plaintiffs and purchasers, constituted outrageous conduct, was perpetrated by evil motive and with reckless indifference to the rights of Plaintiffs and others, justifying the imposition of punitive damages.

106.  Plaintiffs and members of the Class therefore request actual damages in an amount to be proven at trial, punitive damages, reasonable attorney's fees and their costs herein.

WHEREFORE, Plaintiffs and the Class pray that the Court: (1) order that this action be certified and maintained as a class action pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq*.; (2) enter judgment in favor of Plaintiffs and the Class and against Defendant, and (3) award Plaintiffs and the Class compensatory damages, punitive damages, costs of suit, and reasonable attorney's fees in an amount to be determined at trial.

**COUNT VI**

23

## COMMON LAW FRAUD

107.    Plaintiffs repeat and re-allege the allegations set forth in the foregoing paragraphs above as if fully set forth herein.

108.    Defendants are engaged in the business of selling the Part.  By their advertising, labels, written statements, or statement, or otherwise, Defendants have made to Plaintiffs, the Class members, and the consuming public one or more misrepresentations of material fact concerning the character or quality of the Part.  These statements were ongoing and made at such frequent times and widely varied places that enumerating discrete times and places in this Complaint is not practicable, feasible, or possible.

109.    S.A. Gear stated that "Our quality meets or exceeds all OEM specifications."

110.    S.A. Gear stated that Part can be used as a timing chain tensioner in the Engine and, at a minimum, specifies in each of the following vehicles/engines appropriate for such application:

- Chrysler Concorde OEM 2000-2001: 2.7L V6 166 R,U,V DOHC
- Chrysler Concorde OEM 2002-2004: 2.7L V6 166 R,U,V DOHC
- Chrysler Sebring OEM 2001-2005: 2.7L V6 166 R,U,V DOHC
- Chrysler Sebring OEM 2006-2007: 2.7L V6 166 R DOHC
- Chrysler 300 OEM 2005-2007: 2.7L V6 166 R,U,V DOHC
- Chrysler 300, Sebring OEM 2008-2010: 2.7L V6 166 R, D
- Dodge Intrepid OEM 2000-2001: 2.7L V6 166 R,U,V DOHC
- Dodge Intrepid OEM 2002-2004: 2.7L V6 166 R,U,V DOHC
- Dodge Stratus OEM 2001-2004: 2.7L V6 166 R,U,T DOHC
- Dodge Charger, Magnum, Stratus OEM 2005-2007:  2.7L V6 166 R,T DOHC
- Dodge Magnum OEM 2008: 2.7L V6 166 T
- Dodge Avenger, Charger OEM 2008-2010: 2.7L V6 166 R,D

111.    S.A. Gear stated that the Part has, at a minimum, the following "Competitor/OEM Interchange[s]":

- Carquest 9930
- Chrysler 4792443AB

24

- Cloyes 9-5422
- Engine Pro 9422
- Mahle-Clevite 9-5422
- Melling BT506
- Melling BT507
- PBM T5422
- PCI T-66507

112.     AutoZone stated that the Part "is precision machined with high grade material for greater strength and durability."

113.     AutoZone stated that the Part "meets or exceeds O.E.M. specifications in manufacturing and material."

114.     AutoZone stated that that the "Item Grade" of the Part is "OEM Standard."

115.     AutoZone stated that the Part "[m]aintains excellent chain or belt tension."

116.     AutoZone stated that the Part fits, at a minimum, each of the following vehicles/engines ("Fitment Representations"):

- Chrysler 300 2005: 6 Cylinders R 2.7L MFI DOHC (2969101)
- Chrysler 300 2006: 6 Cylinders R 2.7L SFI DOHC (3024701)
- Chrysler 300 2007: 6 Cylinders R 2.7L SFI DOHC (3132501)
- Chrysler Concorde 2000: 6 Cylinders R 2.7L SFI DOHC (2572101)
- Chrysler Concorde 2001: 6 Cylinders R 2.7L SFI DOHC (2627101)
- Chrysler Concorde 2002: 6 Cylinders R 2.7L SFI DOHC (2718301)
- Chrysler Concorde 2003: 6 Cylinders R 2.7L SFI DOHC (2858501)
- Chrysler Concorde 2004: 6 Cylinders R 2.7L MFI DOHC (2912001)
- Chrysler Intrepid (Can) 2000: 6 Cylinders R 2.7L FI (Can) (2827301)
- Chrysler Intrepid (Can) 2001: 6 Cylinders R 2.7L FI (Can) (2827401)
- Chrysler Intrepid (Can) 2002: 6 Cylinders R 2.7L FI (Can) (3077201)
- Chrysler Sebring 2001: 6 Cylinders U 2.7L SFI DOHC (2627405)
- Chrysler Sebring 2002: 6 Cylinders R 2.7L SFI DOHC (2718406)
- Chrysler Sebring 2003: 6 Cylinders R 2.7L MFI (2864203); 6 Cylinders T 2.7L Flex Fuel DOHC (2864204)
- Chrysler Sebring 2004:  6 Cylinders R 2.7L SFI DOHC (2912405); 6 Cylinders T 2.7L Flex Fuel DOHC (2912404)
- Chrysler Sebring 2005:  6 Cylinders R 2.7L SFI DOHC (2997704); 6 Cylinders T 2.7L Flex Fuel DOHC (2997703)
- Chrysler Sebring 2006:  6 Cylinders R 2.7L SFI DOHC (3030402); 6 Cylinders T 2.7L Flex Fuel DOHC (3030403)

- Chrysler Sebring 2007:  6 Cylinders 2.7L MFI DOHC (3129805); 6 Cylinders R 2.7L Flex Fuel DOHC (3129804)
- Chrysler Sebring Convertible 2001:  6 Cylinders U 2.7L SFI DOHC (2627502)
- Chrysler Sebring Convertible 2002:  6 Cylinders R 2.7L SFI DOHC (2718502)
- Chrysler Sebring Convertible 2003:  6 Cylinders R 2.7L MFI (2864302); 6 Cylinders T 2.7L Flex Fuel DOHC (2864303)
- Chrysler Sebring Convertible 2004:  6 Cylinders R 2.7L SFI DOHC (3206402)
- Chrysler Sebring Convertible 2005:  6 Cylinders R 2.7L SFI DOHC (3206502)
- Chrysler Sebring Convertible 2006:  6 Cylinders R 2.7L SFI DOHC (3206601)
- Dodge Charger 2006: 6 Cylinders R 2.7L SFI DOHC (3022804)
- Dodge Charger 2007: 6 Cylinders R 2.7L SFI DOHC (3133901)
- Dodge Intrepid 2000: 6 Cylinders R 2.7L SFI DOHC (2588501); 6 Cylinders U 2.7L SFI DOHC (2588504)
- Dodge Intrepid 2001: 6 Cylinders R 2.7L SFI DOHC (2625402); 6 Cylinders U 2.7L SFI DOHC (2625401)
- Dodge Intrepid 2002: 6 Cylinders R 2.7L SFI DOHC (2719601)
- Dodge Intrepid 2003: 6 Cylinders R 2.7L SFI DOHC (2856602)
- Dodge Intrepid 2004: 6 Cylinders R 2.7L SFI DOHC (2912501)
- Dodge Magnum 2WD 2005: 6 Cylinders T 2.7L MFI DOHC (2969601)
- Dodge Magnum 2WD 2006: 6 Cylinders T 2.7L MFI DOHC (3017601)
- Dodge Magnum 2WD 2007: 6 Cylinders T 2.7L MFI DOHC (3134401)
- Dodge Stratus 2001: 6 Cylinders U 2.7L SFI DOHC (2625307)
- Dodge Stratus 2002: 6 Cylinders R 2.7L SFI DOHC (2719807)
- Dodge Stratus 2003: 6 Cylinders R 2.7L MFI (2856807); 6 Cylinders T 2.7L Flex Fuel DOHC (2856808)
- Dodge Stratus 2004: 6 Cylinders R 2.7L SFI DOHC (2912903); 6 Cylinders T 2.7L Flex Fuel DOHC (2912902)
- Dodge Stratus 2005: 6 Cylinders R 2.7L SFI DOHC (2997803); 6 Cylinders T 2.7L Flex Fuel DOHC (2997804)
- Dodge Stratus 2006: 6 Cylinders R 2.7L SFI DOHC (3030502); 6 Cylinders T 2.7L Flex Fuel DOHC (3030503)

117.    Each of the foregoing statements was false, and Defendants made such statements with knowledge of their falsity and/or reckless disregard for the truth or falsity of such statements.

118.    Plaintiff, the Class members, and the consuming public justifiably relied on Defendants' misrepresentations in purchasing the Part.

119.   As the proximate cause and legal result of the breach of the fraudulent misrepresentations regarding the Part as manufactured and/or supplied and/or distributed by Defendants and as a direct and legal result of the conduct of Defendants described herein, Plaintiff and the Class have been damaged directly, incidentally, and consequentially, including but not limited to the price paid for the Part and the damage to the Engines and the Vehicles of the Plaintiff and the Class.

WHEREFORE, Plaintiffs and the Class pray that the Court: (1) order that this action be certified and maintained as a class action; (2) enter judgment in favor of Plaintiffs and the Class and against Defendant; and (3) award Plaintiffs and the Class compensatory damages, punitive damages, costs of suit, and reasonable attorney's fees in an amount to be determined at trial.

<u>**COUNT VII**</u>

**FRAUDULENT CONCEALMENT**

120.   Plaintiffs repeat and re-allege the allegations set forth in the foregoing paragraphs above as if fully set forth herein.

121.   As set forth in the foregoing paragraphs, Defendants concealed and/or suppressed material facts concerning the safety and/or quality of the Part.

122.   Defendants has a duty to disclose these safety and/or quality issues because they consistently marketed the Part as reliable and safe and proclaimed that the Part was manufactured to the highest standards.   Once Defendants made such representations to consumers, the public, Plaintiff and the Class, they were under a duty to disclose these omitted facts, because where one chooses to speak, one must speak the whole truth and not conceal any facts which materially qualify those facts stated.   One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

27

123.    In addition, Defendants had a duty to disclose these omitted material facts because they known and/or accessible only to Defendants who have superior knowledge and access to the facts, and Defendants knew they were not known to or reasonably discoverable by Plaintiffs and the Class.   These omitted facts were material because they directly impact the safety of any vehicle in which the Part is installed.   Whether or not an Engine will experience timing chain chatter, loss of pressure, and/or catastrophic engine failure are material safety concerns.

124.    Defendants actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce consumers, Plaintiff, and the Class to purchase the Part, and/or to pay a price for the Part which did not match the Part's true value.

125.    Consumers, Plaintiff, and the Class placed trust and confidence in the Defendants with respect to the Part, and relied upon Defendants' representations with respect to the Part, which reliance was intended by Defendants.

126.    Consumers, Plaintiff, and the Class were unaware of the false and/or omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts.   The actions of Plaintiff and the Class were justified.   Defendants were in exclusive control of the material facts concerning the Part and its defects and such facts were not known to consumers, Plaintiff, or the Class members.

127.    As the proximate cause and legal result of the concealment and/or suppression of material facts by Defendants and as a direct and legal result of the conduct of Defendants described herein, Plaintiff and the Class have been damaged directly, incidentally, and consequentially, including but not limited to the price paid for the Part and the damage to the Engines and the Vehicles of the Plaintiff and the Class.

128.    Defendants' acts were done maliciously, oppressively deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' right and well-being in order to enrich Defendants.  Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

WHEREFORE, Plaintiffs and the Class pray that the Court: (1) order that this action be certified and maintained as a class action; (2) enter judgment in favor of Plaintiffs and the Class and against Defendant; and (3) award Plaintiffs and the Class compensatory damages, punitive damages, costs of suit, and reasonable attorney's fees in an amount to be determined at trial.

## COUNT VIII

## STRICT PRODUCT LIABILITY – DESIGN DEFECT

129.    Plaintiffs repeat and re-allege the allegations set forth in the paragraphs above as if fully set forth herein.

130.    At all times material to this action, Defendants were responsible for designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling to its distributors or the public and otherwise putting the Part into the stream of commerce.

131.    The Part is defective and unreasonably dangerous to consumers.

132.    The Part is defective in its design and/or formulation in that it is not reasonably fit, suitable, or safe for its intended purpose as a timing chain tensioner for the Engine and/or its foreseeable risks exceed the benefits associated with its design.

133.   At all times material to this action, the Part was expected to reach, and did reach, consumers throughout the United States, including Plaintiffs and the Class members herein, without any significant change in the condition in which it was sold.

134.   At all times material to this action, the Part was designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled, and/or sold to its distributors and otherwise put into the stream of commerce by Defendants in a defective and unreasonably dangerous condition at the time it was placed in the stream of commerce in ways which include, but are not limited to, one or more of the following particulars:

    a.   when placed in the stream of commerce, the Part contained unreasonably dangerous design defects and was not reasonably safe as intended to be used, subjecting Plaintiffs and Plaintiffs' Decedents to risks that exceeded the benefits of the Part, including but not limited to timing chain chatter, loss of pressure, and/or catastrophic Engine failure;

    b.   when placed in the stream of commerce, the Part was defective in design, making the use of the Part more dangerous than an ordinary consumer would expect, and more dangerous than other risks associated with the other timing chain tensioners on the market;

    c.   the Part's design defects existed before it left the control of the Defendants;

    d.   the Part was insufficiently tested;

    e.   the Part caused loss and damage that outweighed any potential utility;

    f.   the Part was not accompanied by adequate instructions and/or warnings to fully apprise consumers, including Plaintiff and the Class members, of the full nature and extent of the risks and side effects associated with its use, thereby rendering Defendants, liable to Plaintiff and the Class, individually and collectively; and

    g.   the Part was not accompanied by adequate instructions and/or warnings to fully apprise consumers and the public of the full nature and extent of the risks, dangers, and harm associated with its use, thereby rendering Defendants liable to Plaintiffs and the Class, individually and collectively.

135.   In addition, at the time the Part left the control of the Defendants, there were practical and feasible alternative designs that would have prevented and/or significantly reduced

the risk of Plaintiff's and the Class members' injuries and losses without impairing the reasonably anticipated or intended function of the product. These safer alternative designs were economically and technologically feasible, and would have prevented or significantly reduced the risk of Plaintiff's and the Class members' injuries and losses without substantially impairing the Part's utility.

136.   As the proximate cause and legal result of the defective design of the Part as manufactured and/or supplied and/or distributed by Defendants and as a direct and legal result of the conduct of Defendants described herein, Plaintiff and the Class have been damaged directly, incidentally, and consequentially, including but not limited to the price paid for the Part and the damage to the Engines and the Vehicles of the Plaintiff and the Class.

WHEREFORE, Plaintiffs and the Class pray that the Court: (1) order that this action be certified and maintained as a class action; (2) enter judgment in favor of Plaintiffs and the Class and against Defendant; and (3) award Plaintiffs and the Class compensatory damages, punitive damages, costs of suit, and reasonable attorney's fees in an amount to be determined at trial.

## COUNT IX

## STRICT PRODUCT LIABILITY – MANUFACTURING DEFECT

137.   Plaintiffs repeat and re-allege the allegations set forth in the paragraphs above as if fully set forth herein.

138.   At all times herein mentioned, Defendants' Part was installed and used as intended by Defendants, and in a manner reasonably foreseeable to Defendants.

139.   The Part(s) were defective at the time of their manufacture, development, production, testing, inspection, endorsement, prescription, sale and distribution, and at the time they left the possession of Defendants, in that, and not by way of limitation, the products differed

31

from the Defendants' intended result and intended design and specifications, and from other ostensibly identical units of the same product line.

140.   As the proximate cause and legal result of the defective condition of the Part as manufactured and/or supplied and/or distributed by Defendants and as a direct and legal result of the conduct of Defendant described herein, Plaintiffs have been damaged Plaintiff and the Class have been damaged directly, incidentally, and consequentially, including but not limited to the price paid for the Part and the damage to the Engines and the Vehicles of the Plaintiff and the Class.

WHEREFORE, Plaintiffs and the Class pray that the Court: (1) order that this action be certified and maintained as a class action; (2) enter judgment in favor of Plaintiffs and the Class and against Defendant; and (3) award Plaintiffs and the Class compensatory damages, punitive damages, costs of suit, and reasonable attorney's fees in an amount to be determined at trial.

## COUNT X

### STRICT PRODUCT LIABILITY – FAILURE TO WARN

141.   Plaintiffs repeat and re-allege the allegations set forth in the paragraphs above as if fully set forth herein.

142.   The Part manufactured and/or supplied by Defendants was unaccompanied by proper warnings regarding the hazards and dangers present when using the Part in the Engine. Defendants failed to perform adequate testing in that adequate testing would have shown that the Part possessed serious defects with respect to which full and proper warnings accurately and fully reflecting the harm should have been made with respect to the use of the Part.  Had the testing been adequately performed, the Part would have been allowed to enter the market, if at

all, only with warnings that would have clearly and completely identified the risks and dangers of its use.

143.    The Part manufactured and/or distributed and/or supplied by Defendants was defective due to inadequate post-manufacture warning or instruction because Defendants failed to provide adequate warnings to users or consumers of the Part and continued to aggressively promote it.

144.    As the proximate cause and legal result of the defective condition of the Part as manufactured and/or supplied and/or distributed by Defendants and as a direct and legal result of the conduct of Defendant described herein, Plaintiff and the Class have been damaged directly, incidentally, and consequentially, including but not limited to the price paid for the Part and the damage to the Engines and the Vehicles of the Plaintiff and the Class.

WHEREFORE, Plaintiffs and the Class pray that the Court: (1) order that this action be certified and maintained as a class action; (2) enter judgment in favor of Plaintiffs and the Class and against Defendant; and (3) award Plaintiffs and the Class compensatory damages, punitive damages, costs of suit, and reasonable attorney's fees in an amount to be determined at trial.

## COUNT XII

### NEGLIGENCE

145.    Plaintiffs repeat and re-allege the allegations set forth in the paragraphs above as if fully set forth herein.

146.    At all times relevant hereto, it was the duty of Defendants to use reasonable care in the manufacturing, design, distribution, and/or sale of the aforesaid Part.

147.    In disregard of its aforesaid duty, the Defendants were guilty of one or more of the following negligent acts or omissions:

a. Manufacturing, producing, promoting, formulating, creating, developing, designing, selling, and/or distributing the Part without thorough and adequate pre- and post-market testing of the Part;

b. Manufacturing, producing, promoting, advertising, formulating, creating, developing, and designing, and/or distributing the Part while negligently and intentionally concealing and failing to disclose data which demonstrated the danger, risk of harm, and risk of loss associated with the use of the Part;

c. Failing to undertake sufficient studies and conduct necessary tests to determine whether or not the Part was safe for its intended use;

d. Failing to disclose and warn of the product defect to the regulatory agencies, the public, and consumers that Defendants knew and had reason to know that the Part was indeed unreasonably unsafe and unfit for use by reason of the Part's defect and risk of harm to its users in the form of, but not limited to, timing chain chatter, loss of pressure, and/or catastrophic Engine failure;

e. Failing to warn Plaintiff and the Class members and consumers that the product's risk of harm was unreasonable and that there were safer and effective alternative devices available to Plaintiffs, the Class members and other consumers;

f. Failing to provide adequate instructions, guidelines, and safety precautions to those persons to whom it was reasonably foreseeable would install and/or use the Part in the Engine;

g. Advertising, marketing and recommending the use of the Part, while concealing and failing to disclose or warn of the dangers known by Defendants to be connected with, and inherent in, the use of the Part;

h. Representing that the Part was safe for its intended use when in fact; Defendants, knew or should have known the product was not safe or proper for its intended purpose;

i. Failing to disclose to and inform purchasers and consumers that other alternative devices were available for use for the purpose for which the Part was manufactured;

j. Continuing to manufacture and sell the Part with the knowledge that the Part was unreasonably unsafe and dangerous;

k. Failing to use reasonable and prudent care in the design, research, manufacture, and development of the Part so as to avoid the risk of serious harm or loss associated with the use of the Part;

l.  Failing to ensure the product was accompanied by proper and accurate warnings about possible harm or loss associated with the use of the Part and that use of the Part created a high risk of harm or loss to the Engine, including but not limited to timing chain chatter, loss of pressure, and/or catastrophic engine failure;

m.  Failing to conduct adequate testing and post-marketing surveillance to determine the safety of the Part.

148.   As the proximate cause and legal result of the defective design of the Part as manufactured and/or supplied and/or distributed by Defendants and as a direct and legal result of the conduct of Defendants described herein, Plaintiff and the Class have been damaged directly, incidentally, and consequentially, including but not limited to the price paid for the Part and the damage to the Engines and the Vehicles of the Plaintiff and the Class.

WHEREFORE, Plaintiffs and the Class pray that the Court: (1) order that this action be certified and maintained as a class action; (2) enter judgment in favor of Plaintiffs and the Class and against Defendant; and (3) award Plaintiffs and the Class compensatory damages, punitive damages, costs of suit, and reasonable attorney's fees in an amount to be determined at trial.

## COUNT XII

## NEGLIGENT MISREPRESENTATION

149.   Plaintiffs repeat and re-allege the allegations set forth in the foregoing paragraphs above as if fully set forth herein.

150.   Defendants had a duty to represent to consumers and to the Plaintiff and Class members that the Part had been tested and found to be safe and effective for its intended purpose and/or that the Part was of OEM specification.

151.   Defendants made such representations.

152.   The representations made by Defendants were in fact false.

35

153.    Defendants failed to exercise ordinary care in the representation of the Part, while involved in their manufacture, sale, testing, quality assurance, quality control, and/or distribution of the Part into interstate commerce in that the Defendants negligently misrepresented the product's high risk of loss, damage, and/or harm.

154.    Defendants breached their duty in representing the Part's serious defects and/or failings to the consuming public, to the Plaintiff, and to the Class members.

155.    As the proximate cause and legal result of the breach of the negligent misrepresentation regarding the Part as manufactured and/or supplied and/or distributed by Defendants and as a direct and legal result of the conduct of Defendants described herein, Plaintiff and the Class have been damaged directly, incidentally, and consequentially, including but not limited to the price paid for the Part and the damage to the Engines and the Vehicles of the Plaintiff and the Class.

WHEREFORE, Plaintiffs and the Class pray that the Court: (1) order that this action be certified and maintained as a class action; (2) enter judgment in favor of Plaintiffs and the Class and against Defendant; and (3) award Plaintiffs and the Class compensatory damages, punitive damages, costs of suit, and reasonable attorney's fees in an amount to be determined at trial.

## COUNT XIII

### UNJUST ENRICHMENT

156.    Plaintiffs re-allege the allegations contained in the foregoing paragraphs as if fully set out herein.

157.    The Defendants embarked on and carried out a common scheme of marketing and selling the Part by omitting, suppressing, and/or concealing material information regarding the

Part; namely, *inter alia*, the that the Part was not suitable for use as a timing chain tensioner in the Engine.

158.   The Defendant's practices were designed to result in the Plaintiffs and members of the Class purchasing the Part.

159.   The Defendant's practices further resulted in the Plaintiffs' and members of the Class purchasing the Part without understanding the true dangers of the Defendants' Part or the Defendant's omissions, suppressions, and/or concealment of material terms to increase their own ill-gotten profits.

160.   The monies paid by the Plaintiffs and the Class to Defendant in the purchase of the Part conferred substantial benefits upon the Defendant. The Defendant knew of and appreciated the benefits conferred upon them by the Plaintiffs and the Class and accepted and retained these benefits, which, in justice and fairness, should be refunded and paid over to the Plaintiffs and the Class in an amount to be proven at trial.

WHEREFORE, Plaintiffs and the Class pray that the Court: (1) order that this action be certified and maintained as a class action; (2) enter judgment in favor of Plaintiffs and the Class and against Defendant; and (3) award Plaintiffs and the Class compensatory damages, punitive damages, costs of suit, and reasonable attorney's fees in an amount to be determined at trial.

## PRAYER FOR RELIEF

Plaintiff, on behalf of himself and all others similarly situated, requests the Court to enter judgment against the Defendants, as follows:

      A. An order certifying the proposed Class(es) and designating Plaintiff as the named representative of the Class(es), and designating the undersigned as Class Counsel;

      B. A declaration that the Part is defective;

C. A declaration that the Defendants are financially responsible for notifying all Class Members about the defective nature of the Part;

D. An order enjoining Defendants to desist from further deceptive distribution and sales practices with respect to the Part, and directing Defendants to permanently, expeditiously, and completely repair any Engine or Vehicle to eliminate the defective Part and/or the loss, harm, or damage caused therefrom;

E. An award to Plaintiff and Class Members of compensatory, exemplary, and statutory penalties and damages, including interest, in an amount to be proven at trial;

F. A declaration that Defendants must disgorge, for the benefit of Plaintiff and Class Members, all or part of the ill-gotten profits they received from the distribution or sale of the Part, or make full restitution to Plaintiff and the Class Members;

G. An award of attorneys fees and costs, as allowed by law;

H. An award of pre-judgment and post-judgment interest, as provided by law;

I. Leave to amend this Complaint to conform to the evidence produced during discovery or at trial of this matter; and

J. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable by right.

Respectfully submitted,
THE DRISCOLL FIRM, P.C.

BY:    /s/ John J. Driscoll
          JOHN J. DRISCOLL (6276464)
          GREGORY J. PALS (6271778)
          THE DRISCOLL FIRM, P.C.
          211 North Broadway, Suite 4050
          St. Louis, Missouri 63012
          Telephone No. (314) 932-3232
          Fax No. (314) 932-3233