**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| STEVE WILLIAMSON and | ) | |
| RHONDA CHRISTINE LEMASTER, On | ) | |
| Behalf of Themselves and All Others | ) | |
| Similarly Situated, | ) | |
| | ) | **Case No. 15-CV-365-SMY-DGW** |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| S.A. GEAR COMPANY, INC., | ) | |
| AUTOZONE, INC., | ) | |
| AUTOZONE PARTS, INC., and | ) | |
| AUTOZONE STORES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Before the Court is Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint for Failure to State a Claim (Doc. 44). Plaintiffs filed a response (Doc. 50). For the following reasons, the motion is **GRANTED in part and DENIED in part**.

## Background

Plaintiffs Steve Williamson and Rhonda Christine LeMaster ("Plaintiffs"), filed this action against Defendants S.A. Gear Company, Inc., Autozone, Inc., Autozone Parts, Inc., and Autozone Stores, Inc. ("Defendants") alleging that the Defendants manufactured, distributed, advertised, and/or sold defective timing chain tensioners ("the Part") (Doc. 35). Plaintiffs maintain that the Part, intended and marketed for use as a replacement part in certain Chrysler engines, was defective, prone to failure and otherwise unsuitable for such use. They allege that Defendants failed to disclose that the Part was defective and, instead, knowingly sold and or promoted the defective Part into the stream of interstate commerce, knowing consumers would

install the Part into their vehicles. Plaintiffs further allege that due to Defendants' misrepresentations and concealment of material information regarding the Part, its defects and its propensity to fail, the Part was not appropriate for its intended and marketed use and was not worth the purchase price paid by Plaintiffs and the Class.

Plaintiffs' Amended Complaint sets forth the following causes of action on behalf of themselves and all others similarly situated: Count I – violations of the Magnuson-Moss Warranty Act; Count II – breach of express warranty; Count III – breach of implied warranty – merchantability; Count IV – breach of implied warranty – fitness for a particular purpose; Count V – violation of Illinois Consumer Fraud and Deceptive Practices Act; Count VI – common law fraud; Count VII – fraudulent concealment; Count VIII – violation of the Racketeer Influence and Corrupt Organization Act, 18 U.S.C. § 1962(c) and (d); Count IX – strict product liability – design defect; Count X – strict product liability – manufacturing defect; Count XI – strict product liability – failure to warn; Count XII – negligence; Count XIII – negligent misrepresentation; Count XIV – breach of contract; and Count XV – unjust enrichment. Defendants move to dismiss each count of the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

<u>**Discussion**</u>

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Lodholtz v. York Risk Servs. Group, Inc.,* 778 F.3d 635, 639 (7th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The Court draws all reasonable

inferences and facts in favor of the nonmovant.  *See Vesely v. Armslist LLC,* 762 F.3d 661, 664 (7th Cir. 2014).  Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (citation omitted).

Under Rule 9(b), a party pleading fraud must "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  This "ordinarily requires describing the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).

Defendants contend that Plaintiffs' claims must be dismissed on numerous grounds:

(1) Plaintiffs' breach of written warranty claims fail because there were no written warranties provided with the Part and any alleged warranties at issue neither promised that the material/workmanship was defect free nor included a specified time period; (2) Plaintiffs' breach of implied warranty claims fail as to Defendant SA Gear, Inc. due to lack of privity; (3) Plaintiffs did not adequately support their Illinois Consumer Fraud Act claim with particularity; (4) Plaintiffs did not sufficiently plead their fraud or fraudulent concealment claims; (5) Plaintiffs fail to demonstrate a crime, criminal enterprise or pattern of racketeering activity to establish a RICO claim; (6) Plaintiffs' allegations fail to establish what purported defect existed with the Part at the time of purchase and Plaintiffs have not demonstrated that the manufacturer did not disclose an unreasonably dangerous condition or instruct on the proper use of the product; (7) Plaintiffs' negligence claims are barred under the *Moorman* doctrine; (8) Plaintiffs fail to demonstrate the existence of a valid and enforceable contract with the Defendants; and (9) Plaintiffs have not sufficiently pled unjust enrichment nor allege that they have no adequate remedy at law.

### Breach of Written Warranty Claims (Counts I and II)

In Counts I and II, Plaintiffs allege claims for breach of express warranty under Illinois law and the Magnuson-Moss Warranty Act ("MMWA").  Defendants assert that Plaintiffs have failed to state a claim for breach of a written warranty because the statements identified by

Plaintiffs are mere "product descriptions" or advertising that the Part met or exceeded OE performance and any such statements were puffing which do not constitute warranties under either Illinois law or the MMWA.

Under Section 2–313 of the Uniform Commercial Code ("UCC"), an express warranty is created where (1) the seller makes an affirmation of fact or promise; (2) that relates to the goods; and (3) becomes part of the basis of the bargain between the parties.  *See Royal Bus. Mach., Inc. v. Lorraine Corp.,* 633 F.2d 34, 41 (7th Cir. 1980).  "An affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty."  810 IL.C.S. 5/2–313(2) (2012).  Thus, "[s]ales talk which relates only to the value of the goods or the seller's personal opinion or commendation of the goods is considered puffing and is not binding on the seller."  *Redmac, Inc. v. Computerland of Peoria,* 489 N.E.2d 380, 382 (3rd Dist. 1986); *All–Tech Telecom, Inc. v. Amway Corp.,* 174 F.3d 862, 868 (7th Cir. 1999) (statements are puffing if they are "empty superlatives on which no reasonable person would rely.").  The question of whether a statement constitutes an express warranty or mere puffery is generally considered a question of fact.  *Redmac, Inc.,* 489 N.E.2d at 382; 810 I.L.C.S. 5/2–313, cmt. 3.

Here, Plaintiffs allege that Defendants made several affirmations of fact and promises with respect the Part, including but not limited to "its specifications, quality, and proper uses… these affirmations of fact and promises became a part of the basis of the bargain with Plaintiffs and the Class members" (Doc. 35, ¶¶ 33-39).   Plaintiffs further allege that the Defendants warranted, among other things, that the Part was "precision machined with high grade material for greater strength and durability," that the Part met or exceeded "OEM specifications in manufacturing and material," that the Part maintained "excellent chin or belt tension," and that

4

the Part was "engineered to meet or exceed OE performance" (Doc. 35, ¶¶ 33-39).  Plaintiffs also allege that Defendants' representation that the Part conforms to OEM standards and/or specifications is a representation that the Part will perform adequately for a specified period of time (for example, upon information and belief, it is the standards and specifications of OEM Chrysler that timing chain tensioners will perform adequately for a period of at least three years." (Doc. 35, ¶ 30).

Based on these allegations, Plaintiffs have sufficiently stated a claim for breach of written warranty to survive a motion to dismiss.  Whether Defendants' statement that the Part met or exceeded OE performance is an affirmation of fact or promise is a question of fact that cannot be resolved on a motion to dismiss. *Redmac, Inc.,* 489 N.E.2d at 382; 810 Ill. Comp. Stat. 5/2–313, cmt. 3.  Accordingly, Defendants' motion to dismiss Plaintiffs' breach of written warranty claim under Illinois law is denied.

"The MMWA is a remedial statute designed to protect consumers against deceptive warranty practices." *Anderson v. Gulf Stream Coach, Inc.,* 662 F.3d 775, 780 (7th Cir. 2011) (citing *Skelton v. Gen. Motors Corp.,* 660 F.2d 311, 313 (7th Cir. 1981)).  The MMWA "provides a federal private cause of action for a warrantor's failure to comply with the terms of a 'written warranty, implied warranty or service contract." *Anderson,* 662 F.3d at 780 (quoting *Voelker v. Porsche Cars N. Am., Inc.,* 353 F.3d 516, 522 (7th Cir. 2003).  The MMWA defines a written warranty as:

(A) any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time, or

(B) any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with

respect to such product in the event that such product fails to meet the specifications set forth in the undertaking, which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product.

15 U.S.C. § 2301.

Defendants maintain that as the written warranties upon which Plaintiffs base their claim under the MMWA (Count I) are identical to the written warranties alleged in Count II, Plaintiffs' MMWA claim fails for the same reasons their written warranty claims in Count I fail. However, as the Court found with respect to the complaint allegations in Count II, and for the same reasons, Plaintiff has sufficiently stated a claim under the above-referenced MMWA standards for breach of written warranty. As such, Defendants' motion is likewise denied as to the breach of written warranty claim set forth in Count I.

### Breach of Implied Warranty Claims (Counts I, III and IV)

Under the UCC, as adopted by Illinois, "a warranty that goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." 810 I.L.C.S. 5/2–314. Where a plaintiff seeks to sue a manufacturer (as opposed to a seller) for breach of an implied warranty, Illinois requires the plaintiff to establish privity of contract between the plaintiff and the manufacturer in suits seeking recovery for economic loss. *See Rothe v. Maloney Cadillac, Inc.*, 518 N.E.2d 1028, 1029 (1988) (concluding that, with respect to purely economic loss, the UCC article II implied warranties give a buyer of goods a potential cause of action only against his immediate seller and since no privity existed between plaintiff and General Motors, plaintiff could not maintain a cause of action for breach of implied warranty under state law); *Jensen v. Bayer,* 862 N.E.2d 1091, 1099 (1st Dist. 2007) (noting that under the UCC section on implied warranties, as adopted by Illinois, a plaintiff will only have a cause of

action for breach of an implied warranty of merchantability against the entity from which the plaintiff purchased the good).

In this case, Defendants contend that Plaintiffs' implied warranty claims against SA Gear should be dismissed for lack of privity. Plaintiffs, however, assert that in the context of the MMWA, Illinois law does not require privity to enforce implied warranties. The MMWA defines implied warranty as "an implied warranty arising under State law (as modified by sections 2308 and 2304(a) of this title) in connection with the sale by a supplier of a consumer product." 15 U.S.C. § 2301(7). Specifically, § 2301(7) of the MMWA expressly limits implied warranties to those "arising under" state law, except where modified in sections 2308 and 2304(a). Those two sections preclude warrantors from disclaiming or modifying existing warranties—they do not create new obligations. *See Soldinger,* 1999 WL 756174 at *8–10; *Abraham,* 795 F.2d at 247–48. The MMWA, therefore, requires a court to examine Illinois law to determine if an implied warranty was created. *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 525 (7th Cir. 2003). In Illinois, an implied warranty does not arise in the absence of privity. Thus, privity is required for implied warranty claims under the MMWA. *Id.*

Congress had no intention of modifying traditional privity requirements or creating new state law obligations when writing the MMWA. *Voelker*, 353 F.3d at 525 (7th Cir. 2003) (affirming dismissal of plaintiff's implied warranty claim under the Magnuson-Moss Act, citing Illinois law that privity of contract is a prerequisite to recover economic damages for breach of implied warranty and that plaintiff failed to allege privity with the manufacturer of the car he had leased); *Kutzler v. Thor Industries Inc.,* 2003 WL 21654260 (N.D. Ill. 2003); *Diamond v. Porsche Cars North America, Inc.,* 2002 WL 31155064 (N.D. Ill .2002); *Kowalke v. Bernard Chevrolet, Inc.,* 2000 WL 656660 (N.D. Ill. 2000); *Larry J. Soldinger Assocs., Ltd. v. Aston*

*Martin Lagonda of North America, Inc.,* 1999 WL 756174 (N.D. Ill. 1999); *see also Abraham v. Volkswagen of America, Inc.,* 795 F.2d 238, 247–48 (2nd Cir. 1986); *Walsh v. Ford Motor Co.,* 807 F.2d 1000, 1014 (D.C. Cir. 1986) (both holding that the Magnuson–Moss Act did not alter or abolish state law privity requirements).   For these reasons, Plaintiffs' breach of implied warranty claims in Counts I, III and IV are dismissed as to Defendant SA Gear.

**Illinois Consumer Fraud and Deceptive Business Practices Act (Count V)**

To plead a violation of section 2 of the ICFA "a plaintiff must allege: (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception."   *Oliveira v. Amoco Oil Co.,* 776 N.E.2d 151, 160 (Ill. 2002).   Defendants argue that there is insufficient information contained in the Amended Complaint regarding their alleged deceptive conduct.   However, several paragraphs in the Amended Complaint outline alleged deceptive practices by Defendants:

- Defendants S.A. Gear and AutoZone – or acting at the behest of Defendants, their employees – stated to the consuming public that the Part was fit for use as a timing chain tensioner in the Vehicles/Engine, and also stated to the consuming public that the Part met or exceed Original Equipment Manufacturer standards and specifications. Defendants knew these representations were false; or exhibited gross indifference to the truth or falsity of such statements prior to making them. Defendants repeated such statements to any members of the consuming public interested in the purchase of timing chain tensioners for one or more of the Vehicles containing an Engine. Defendants' scheme was nationwide in scope, with Defendants' repeating such statements in any/all of their stores/shops where such members of the consuming public expressed in interest, both through the words and deeds of Defendants' employees, as well as Defendants' marketing materials, reference guides, and products labelling. The time frame of such statements was also ubiquitous; Defendants made such representations at any/all times that any member of the consuming public expressed an interest. Defendants also published these statements continuously and near-permanently in their trade magazines and/or catalogs, as well as on the Internet sites they control.

- Defendants' wrongdoing is compounded by the fact that, at all times, Defendants held themselves out as automotive experts with knowledge and information superior to that of the consuming public with respect to these matters. Defendants actively encouraged the public to place trust and confidence in Defendants with respect to Defendants' automotive expertise, thereby placing Defendants in a position of influence and superiority over the members of the public.

- In short, Defendants engaged in an overarching scheme to foist unsuitable and dangerous timing chain tensioners upon the public by deceptively misrepresenting material facts as to the materials, performance, workmanship, design, quality, and/or suitability of their tensioners for use in the Vehicles. That is a classic case of fraud. The fine details of each and every instance of Defendants' actions in perpetrating the scheme, which are not required to be set forth in Plaintiffs' complaint, will likely be uncovered by discovery of business records and materials uniquely in Defendants' possession.

(*see* Doc. 35, ¶¶ 64-67).  These allegations, among others, sufficiently detail Defendants' alleged deceptive conduct.  As such, Plaintiffs' ICFA claim will not be dismissed.

## Fraud (Count VI)

In order to state a cause of action for common law fraud, the essential elements of fraud must be pleaded with specificity.  Under Illinois law, a plaintiff must show that (1) defendant made a false statement of material fact, (2) defendant knew or believed the statement was false, (3) plaintiff had a right to rely upon the statement, (4) plaintiff did rely on the statement, (5) defendant made the statement for the purpose of inducing plaintiff to act, and (6) plaintiff's reliance led to plaintiff's injury.  *Cramer v. Insurance Exchange Agency,* 675 N.E.2d 897, 905 (1996).

Here, the previously referenced allegations are sufficiently specific and allege that Defendants made misrepresentations and omissions of material facts intended to induce them to purchase the Part, that they relied on those misrepresentations and omissions and that as a result, they were injured. Thus, Plaintiffs have pleaded enough to state a common law fraud claim and Defendants' motion to dismiss Count VI is denied.

## Fraudulent Concealment (Count VII)

To plead an action for fraudulent concealment, the plaintiff must plead the elements of fraudulent misrepresentation[1] and "allege that the defendant intentionally omitted or concealed a material fact that it was under a duty to disclose to plaintiff." *Wigod v. Wells Fargo Bank, N.A.,* 673 F.3d 547, 571 (7th Cir. 2012) (citing *Weidner v. Karlin,* 932 N.E.2d 602, 605 (Ill. 2010)).  A duty to disclose a material fact may arise where the parties are in a fiduciary or confidential relationship.  *Connick v. Suzuki Motor Co.,* 675 N.E.2d 584, 593 (Ill. 1996).  Such a duty may also arise where "the plaintiff places trust and confidence in defendant, thereby placing defendant in a position of influence and superiority over plaintiff."  *Id.*  "This position of superiority may arise by reason of friendship, agency, or experience."  *Id.*

However, run-of-the-mill business transactions and contractual relationships are not sufficient to establish a fiduciary relationship.  *Benson v. Stafford,* 941 N.E.2d 386, 397 (Ill. App. Ct. 2010).  Moreover, if a fiduciary relationship does not exist as matter of law, "facts from which a fiduciary relationship arises must be pleaded and proved by clear and convincing evidence."  *Schrager v. N. Cmty. Bank,* 767 N.E.2d 376, 385 (Ill. App. Ct. 2002).

Plaintiffs allege that AutoZone's Chairman, President, and CEO Bill Rhodes has made numerous comments to the public, encouraging the public's trust and confidence in AutoZone's expertise (Doc. 35, ¶ 16).  These allegations are insufficient to establish that Plaintiffs were in a fiduciary or confidential relationship with Defendants.  However, Plaintiffs contend that

---

[1] The elements of a claim of fraudulent misrepresentation in Illinois are: (1) [a] false statement of material fact (2) known or believed to be false by the party making it; (3) intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from that reliance.  *Dloogatch v. Brincat,* 920 N.E.2d 1161, 1166 (2009), quoting *Soules v. General Motors Corp.,* 402 N.E.2d 599, 601 (1980).

Defendants' fiduciary duty arose as a result of their position of influence and superiority. While Defendants undoubtedly had more knowledge about the Part than Plaintiffs, this knowledge did not place Defendants in a "position of superiority" sufficient to take the relationship beyond the realm of "run-of-the-mill business transactions and contractual relationships" necessary to trigger a duty to disclose. "The special relationship threshold is a high one: the defendant must be 'clearly dominant, either because of superior knowledge of the matter derived from ... overmastering influence on the one side, or from weakness, dependence, or trust justifiably reposed on the other side." *Mitchell v. Norman James Construction Co.,* 684 N.E.2d 872, 879 (1997). As the *Mitchell* court explained:

> Factors to be considered in determining the existence of a confidential relationship include the degree of kinship of the parties; any disparity in age, health, and mental condition; differences in education and business experience between the parties; and the extent to which the allegedly servient party entrusted the handling of her business affairs to the dominant party, and whether the dominant party accepted such entrustment.

684 N.E.2d at 879. In short, a defendant accused of fraudulent concealment must have exercised "overwhelming influence" over the plaintiff. *Miller,* 762 N.E.2d at 14. The facts pled here do not indicate such a relationship. Accordingly, Plaintiffs' fraudulent concealment claim must be dismissed.

## RICO (Count VIII)

The RICO statute, 18 U.S.C. § 1962, provides, in pertinent part, "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). "To state a claim under § 1962(c), a RICO plaintiff must show the '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."

*Richmond v. Nationwide Cassel L.P.,* 52 F.3d 640, 644 (7th Cir. 1995).  An "enterprise" for RICO purposes means "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).

A RICO enterprise must consist of more than a group of people who get together to commit a pattern of racketeering activity.  *See Richmond,* 52 F.3d at 644.  The enterprise must be "distinct, separate, and apart from a pattern of racketeering activity: although a pattern of racketeering activity may be the means through which the enterprise interacts with society, it is not itself the enterprise, for an enterprise is defined by what it is, not what it does." *Jennings v. Emry,* 910 F.2d 1434, 1440 (7th Cir. 1990).

Additionally, plaintiffs must establish that each RICO person actively participated or knowingly acquiesced in the alleged scheme, or unwittingly permitted legitimate business operations to become a conduit of criminal activity.  Bare legal and factual distinctness is insufficient.  Rather, a plaintiff must prove the role played by the legally distinct person was non-incidental to bringing about (or concealing) a pattern of racketeering activity.  *See Fitzgerald v. Chrysler Corp.,* 116 F.3d 225, 227 (7th Cir. 1997).  "The [RICO person] must be shown to use its agents or affiliates in a way that bears at least a family resemblance to the paradigmatic RICO case in which a criminal obtains control of a legitimate (or legitimate-appearing) firm and uses the firm as the instrument of his criminality." *Emery v. American Gen. Fin., Inc.,* 134 F.3d 1321, 1324 (7th Cir. 1998).

Plaintiffs' Amended Complaint alleges that the defendants "through contacts, coordination, and agreement, operate to manufacture, distribute, deliver and/or sell automotive parts to the consuming public… This activity constitutes an "enterprise" within the meaning of

18 U.S.C. §1961(4), through which Defendants conducted the pattern of racketeering activity described further herein. This enterprise engaged in, and its activities affected, interstate commerce, including manufacturing and distributing automobile parts, including but in no way limited to the Part in question." (Doc. 35, ¶ 74).

Plaintiffs' RICO enterprise – consisting of only the named Defendants – fails to state a claim.  As the statute requires that the RICO "person" be separate and distinct from the RICO "enterprise," Defendants alone cannot comprise the enterprise.  *Fitzgerald,* 116 F.3d at 226 (citations omitted); *Richmond*, 52 F.3d at 645-46 (This type of complaint, which omits any substantive description of the relevant RICO enterprise that would elucidate the relationship between the enterprise and the non-defendant entities has been found worthy of dismissal); *Williams v. Ford Motor Co.*, 11 F. Supp. 2d 983, 986 (N.D. Ill. 1998) (It is well settled in this circuit that liability under § 1962(c) requires that the RICO person or defendant be separate and distinct from the enterprise).  Because proper pleading of the enterprise element is necessary to proceed on a RICO complaint, Plaintiffs' allegations are insufficient to state a claim under the statute.  Therefore, Plaintiffs' RICO claim will be dismissed.

## Strict Product Liability (Counts IX, X, and XI)

To state a strict product liability claim in Illinois, a plaintiff must plead that the "injury complained of resulted from a condition of the product, that the condition was unreasonably dangerous, and that it existed at the time the product left the manufacturer's control." *Mikolajczyk v. Ford Motor Co.,* 901 N.E.2d 329, 335 (Ill. 2008) (citing *Sollami v. Eaton,* 772 N.E.2d 215, 219 (Ill. 2002)).  "A product may be found to be unreasonably dangerous based on proof of any one of three conditions: a physical defect in the product itself, a defect in the product's design, or a failure of the manufacturer to warn of the danger or to instruct on the proper use of the product." *Mikolajczyk,* 901 N.E.2d at 335.

Defendants assert that Plaintiffs' strict liability claims should be dismissed because it is unclear from the allegations in the Amended Complaint what the purported defect in the Part was at the time of purchase.   Defendants further assert that it is unclear whether Plaintiffs are claiming that the alleged defect is due to a manufacturing or design defect.

Plaintiffs describe the alleged defect as follows:

> Under OEM specifications, the Engine's timing chain tensioner is configured to sit within a certain bore contained in the engine block. The tensioner is equipped with an O-ring fitted within a channel machined into the face of the tensioner. Under OEM specifications, this O-ring and its channel fit completely within the engine block bore, thereby forming an adequate seal and maintaining proper oil pressure. On the Part, the O-ring and the channel are misaligned and misplaced, such that when installed, the O-ring and its channel do not seat completely within the engine block bore. This causes, among other things, damage to the O-ring, inadequate pressure to be maintained within the engine block, loss of oil pressure, timing chain chatter, catastrophic engine failure, and a host of other injuries….

(Doc. 35, ¶ 46).  This description is specific enough to put Defendants on notice of the nature of the alleged defect.

Plaintiffs further allege that Defendants should have warned about the Parts defect and the resulting harm that could occur (Doc. 35, ¶ 222); that the Part was defective in its "design and/or formulation" (Doc. 35, ¶¶ 212-214); and that the Part was defective at the time it was manufactured and when it "left the possession of Defendants, in that, and not by way of limitation, the product differed from the Defendants' intended result and intended design and specifications, and from other ostensibly identical units of the same product line" (Doc. 35, ¶ 219).  At the pleadings stage, Plaintiffs are permitted to plead alternative claims despite inconsistencies between those claims.   Fed.R.Civ.P. 8(d)(2).   Here, Plaintiffs' allegations sufficiently state alternative strict product liability claims under design defect, manufacturing defect and/or failure to warn theories. Accordingly, Defendants' motion to dismiss Plaintiffs' strict liability claims is denied.

**Negligence and Negligent Misrepresentation (Counts XII and XIII)**

Under the *Moorman* doctrine or "economic loss doctrine," claims alleging only injury to economic interests must proceed only in contract, as opposed to both contract and tort. *See Moorman Mfg. Co. v. National Tank Co.,* 435 N.E.2d 443, 448 (Ill. 1982). Economic damages under *Moorman* include "damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits - without any claim of personal injury or damage to other property." *Trans States Airlines v. Pratt & Whitney Canada, Inc.,* 682 N.E.2d 45, 48 (Ill. 1997).

Illinois courts recognize several exceptions to the *Moorman* doctrine, including, as relevant here, where a plaintiff sustains personal injury or property damages due to a sudden or dangerous occurrence. *See In re Chicago Flood Litig.,* 680 N.E.2d 265, 275 (Ill. 1997). A sudden and dangerous occurrence is defined as an occurrence that is "highly dangerous and presents the likelihood of personal injury or injury to other property." *Id.* (internal citation omitted).

Plaintiffs allege that the Part was "separate property from both the vehicle and the engine and that any damage to the Part owing to the Part's defects and/or failure [was] separate and apart from property damage to the vehicle or property damage to the engine arising from those defects and/or failures" (Doc. 35, ¶ 56). Plaintiffs also allege that the defective Part causes harm to the engine, including "loss of oil pressure, timing chain chatter, and/or catastrophic engine failure" (Doc. 35, ¶¶ 53-54). Other than Plaintiffs' conclusory statement that the Part causes "catastrophic engine failure," the alleged harms seem to only affect engine performance and, therefore, do not constitute a sudden and dangerous occurrence. *See Loman v. Freeman,* 890 N.E.2d 446, 452 (Ill. 2008) (The *Moorman* court had in mind fires, explosions, or other

calamitous occurrences due to the product and the resulting risk of harm to persons or property). As such, Plaintiffs' negligence claims are barred by the *Moorman* doctrine.

## Breach of Contract (Count XIV)

To state a cause of action for breach of contract under Illinois law, a plaintiff must show: (1) the existence of a valid contract; (2) the performance of the contract by plaintiff; (3) the breach of the contract by defendant; and (4) a resulting injury to the plaintiff. *Priebe v. Autobarn Ltd.,* 240 F.3d 584, 587 (7th Cir. 2001).

In Count XIV of the Amended Complaint, Plaintiffs allege the following:

Defendants offered, for a price, to furnish Plaintiffs and Class members with a timing chain tensioner conforming to OEM specifications and suitable for use in the vehicles/engine. Plaintiffs and Class members accepted Defendants' offer and paid the demanded price. Defendants breached the agreement by failing to provide plaintiffs and Class members with a timing chain tensioner conforming to OEM specifications and suitable for use in the vehicles/engine. As the proximate cause and legal result of Defendants' breach of such agreements, Plaintiffs and the Class have been damaged directly, indirectly, and consequentially, including but not limited to the price paid for the part and the damage to the engines and the vehicles of the Plaintiffs and the class….
(Doc. 35, ¶¶ 237-240).

Affording the complaint a liberal construction, this Court cannot conclude that no relief could be granted based on any set of facts that could be proven consistent with these allegations. Therefore, Plaintiff's breach of contract claim survives dismissal at this juncture.

## Unjust Enrichment (Count XV)

Unjust enrichment may sound in either quasi-contract or tort. *Peddinghaus v. Peddinghaus,* 692 N.E.2d 1221, 1225 (Ill. App. Ct. 1998). Where the theory sounds in quasi-contract, the claim cannot survive where the plaintiff has alleged the existence of a governing contract. *People ex rel. Hartigan v. E & E Hauling, Inc.,* 607 N.E.2d 165, 177 (Ill. 1992). However, where the unjust enrichment allegations sound in tort, a plaintiff may allege both the

existence of a governing contract and unjust enrichment.  *Liberty Mut. Ins. Co. v. Decking & Steel, Inc.,* 301 F.Supp.2d 830, 835 (N.D. Ill. 2004) (citing *Peddinghaus,* 692 N.E.2d at 1225).  Further, a party may plead a claim for unjust enrichment in the alternative where the existence of a valid contract is questioned.  *See Hickman v. Wells Fargo Bank N.A.,* 683 F.Supp.2d 779, 797 (N.D. Ill. 2010); Fed.R.Civ.P. 8(d)(2) (plaintiffs may plead alternative claims despite any inconsistencies between those claims).

Here, Defendants dispute the existence of a contract.  Thus, to the extent that Plaintiffs' unjust enrichment claim is based on the same conduct underlying their fraud claims, it remains viable.  *See Sirazi v. Gen. Mediterranean Holding, SA,* 2013 WL 812271, at *9 (N.D. Ill. 2013) (finding "no basis to dismiss [an] unjust enrichment claim" where the plaintiffs' underlying fraud claim survived the defendant's motion to dismiss).  Defendants' motion to dismiss Plaintiffs' unjust enrichment claim is denied.

## Conclusion

Accordingly, Defendants' motion to dismiss Plaintiffs' implied warranty claims against Defendant SA Gear (Counts I, III, and IV), Plaintiffs' fraudulent concealment claim against all Defendants (Count VII), Plaintiffs' RICO claim against all Defendants (Count VIII) and Plaintiffs' negligence claims against all Defendants (Counts XII and XIII) is **GRANTED without prejudice**.  The Court denies Defendants' motion to dismiss the remainder of Plaintiffs' Amended Complaint.

**IT IS SO ORDERED.**

**DATED:  January 23, 2017**

s/ Staci M. Yandle
**STACI M. YANDLE**
**United States District Judge**