# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Steve Williamson and Rhonda Christine LeMaster, on Behalf of Themselves and All Others Similarly Situated,<br><br>                    Plaintiffs,<br><br>v.<br><br>S.A. Gear Company, Inc., AutoZone, Inc., AutoZone Stores, Inc., and AutoZone Parts, Inc.<br><br>                    Defendants. | Case Number: 3:15-CV-00365-SMY-DGW<br><br><br><br>**ORAL ARGUMENT REQUESTED** |

## AUTOZONE DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 3

I.      THE TIMING CHAIN TENSIONER AND THE CHRYSLER/DODGE ENGINE ........ 3

II.     WILLIAMSON'S INDIVIDUALIZED EXPERIENCE. ................................................... 5

III.    THE PART IS NOT DEFECTIVE OR UNSUITABLE FOR USE. ................................. 7

ARGUMENT ........................................................................................................................ 8

I.      STANDARDS GOVERNING CLASS CERTIFICATION .............................................. 8

II.     SERIOUS CHOICE OF LAW PROBLEMS PRECLUDE CERTIFICATION OF A
        NATIONWIDE CLASS. .................................................................................................. 9

        A.      Substantive Conflicts In The Various State Laws Preclude Certification. ..............9

        B.      A Nationwide Class is Not Ascertainable. ...........................................................12

III.    PLAINTIFFS ARE INADEQUATE REPRESENTATIVES. ......................................... 12

        A.      Plaintiffs' Claims and Experience Are Unique. ...................................................13

        B.      LeMaster Is Not A Member Of The Class. ...........................................................15

        C.      Neither Plaintiff Can Represent Non-Illinois Citizens or Commercial Account
                Holders. ..............................................................................................................15

        D.      Plaintiffs Are Inadequate Representatives Because They Have Subjected Putative
                Class Members' Personal Injury Claims To Res Judicata. ...................................16

IV.     PLAINTIFFS FAIL TO IDENTIFY COMMON ISSUES SUPPORTED BY COMMON
        EVIDENCE. .................................................................................................................. 17

        A.      The Alleged Defect Does Not Present A Common Question. ................................18

        B.      Proof Of Malfunction Is Required, And Plaintiffs Have Not Provided Any. .........19

        C.      Alleged Misrepresentations Are Not Common To The Class. ...............................20

        D.      AutoZone's Conduct Toward The Class Does Not Present A Common Question.21

        E.      Typicality Does Not Exist. ...................................................................................22

V.      CERTIFICATION OF INJUNCTIVE RELIEF CLAIMS UNDER RULE 23(B)(2) IS
        INAPPROPRIATE. ....................................................................................................... 24

VI.     INDIVIDUAL ISSUES PREDOMINATE OVER ANY COMMON ISSUES. .............. 25

        A.      Improper Installation and Misuse Is a Bar to Predominance. ...............................26

        B.      Causation and Reliance Present Individual Issues. ..............................................27

        C.      Lack of Common Damages Undermines Predominance. ......................................28

VII.    CLASS ADJUDICATION IS NEITHER MANAGEABLE NOR SUPERIOR. ............. 29

CONCLUSION.................................................................................................................... 30

i

# TABLE OF AUTHORITIES

## CASES

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
133 S. Ct. 1184 (2013) .................................................................... 26

*Avery v. State Farm Mut. Auto. Ins. Co.*,
835 N.E.2d 801 (Ill. 2005) ...................................................... 10, 19, 20, 29

*Block v. Abbott Labs.*,
2002 U.S. Dist. LEXIS 5453 (N.D. Ill. Mar. 28, 2002) ........................................ 22, 26

*Bridgestone/Firestone Tires Prods. Liab. Litig.*,
288 F.3d 1012 (7th Cir. 2002) ................................................ 9, 11, 16, 18

*Burton v. Hodgson Mill, Inc.*,
No. 16-1081, 2017 U.S. Dist. LEXIS 53160 (S.D. Ill. Apr. 6, 2017) ........................ 25

*Butler v. Sears, Roebuck & Co.*,
727 F.3d 796 (7th Cir. 2013) ................................................................ *passim*

*Clay v. Am. Tobacco Co.*,
188 F.R.D. 483 (S.D. Ill. 1999) ................................................................ 11

*Comcast Corp. v. Behrend*,
133 S. Ct. 1426 (2013) ........................................................................ 8, 28

*Eike v. Allergan, Inc.*,
850 F.3d 315 (7th Cir. 2017) ................................................................ 21

*Espenscheid v. DirectSat USA, L.L.C.*,
705 F.3d 770 (7th Cir. 2013) ................................................................ 30

*Gen. Tel. Co. of the Sw. v. Falcon*,
457 U.S. 147 (1982) ........................................................................ 17

*Hohider v. UPS*,
574 F.3d 169 (3d Cir. 2009) ................................................................ 30

*In re Aqua Dots Prods. Liab. Litig.*,
654 F.3d 748 (7th Cir. 2011) ................................................................ 9, 29

*In re Canon Cameras Litig.*,
237 F.R.D. 357 (S.D.N.Y. 2006) ................................................................ 19, 26, 27

*In re GMC Dex-Cool Prods. Liab. Litig.*,
241 F.R.D. 305 (S.D. Ill. 2007) ................................................................ 9, 10, 20, 23

*In re IKO Roofing Shingle Prods. Liab. Litig.*,
    757 F.3d 599 (7th Cir. 2014) ........................................................................ 8, 18

*In re Sears, Roebuck & Co., Nos. 05-4742 & 05-2623*,
    2006 U.S. Dist. LEXIS 92169 (N.D. Ill. Dec. 18, 2006) ........................................ 11

*In re Yasmin & Yaz Mktg.* ,
    2012 U.S. Dist. LEXIS 33183 (S.D. Ill. Mar. 13, 2012) ........................................ 16

*J.H. Cohn & Co. v. Am. Appraisal Assocs., Inc.*,
    628 F.3d 994 (7th Cir. 1980) ........................................................................... 22

*Koos v. First Nat'l Bank*,
    496 F.2d 1162 (7th Cir. 1974) ......................................................................... 24

*L.A. v. Lyons*,
    461 U.S. 95 (1983) ....................................................................................... 24

*Langan v. Johnson & Johnson Consumer Cos.*,
    No. 13-1470, 2017 U.S. Dist. LEXIS 35703 (D. Conn. Mar. 13, 2017) ................... 25

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ..................................................................................... 24

*Messner v. Northshore Univ. HealthSystem*,
    669 F.3d 802 (7th Cir. 2012) ................................................................. 12, 18, 19

*Mullins v. Direct Dig., L.L.C.*,
    795 F.3d 654 (7th Cir. 2015) ........................................................................... 12

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999) ..................................................................................... 16

*Oshana v. Coca-Cola Co.*,
    225 F.R.D. 575 (N.D. Ill. 2005) ....................................................................... 23

*Oshana v. Coca-Cola Co.*,
    472 F.3d 506 (7th Cir. 2006) ................................................................. 13, 22, 23

*Parko v. Shell Oil Co.*,
    739 F.3d 1083 (7th Cir. 2014) ......................................................................... 26

*Pella Corp. v. Saltzman*,
    606 F.3d 391 (7th Cir. 2010) ..................................................................... 13, 27

*Randall v. Rolls-Royce Corp.*,
    637 F.3d 818 (7th Cir. 2011) ................................................................. 8, 12, 25

*Robinson v. Sheriff of Cook Cty.*,
    167 F.3d 1155 (7th Cir. 1999) ................................................................. 12

*Saltzman v. Pella Corp.*,
    257 F.R.D. 471 (N.D. Ill. 2009) ....................................................... *passim*

*Scherr v. Marriott Int'l*,
    703 F.3d 1069 (7th Cir. 2013) ................................................................. 24

*Spano v. Boeing Co.*,
    633 F.3d 574 (7th Cir. 2011) ................................................................... 22

*Suchanek v. Sturm Foods, Inc.*,
    764 F.3d 750 (7th Cir. 2014) ............................................................ 8, 13

*Szabo v. Bridgeport Machs., Inc.*,
    249 F.3d 672 (7th Cir. 2001) .............................................................. 8, 9

*Thompson v. Am. Tobacco Co.*,
    189 F.R.D. 544 (D. Minn. 1999) ............................................................ 16

*Thorogood v. Sears, Roebuck & Co.*,
    547 F.3d 742 (7th Cir. 2008) ................................................................. 13

*Tokar v. Crestwood Imps., Inc.*,
    532 N.E.2d 382 (Ill. App. Ct. 1988) ............................................. 10, 19, 23

*Trans States Airlines v. Pratt & Whitney Can.*,
    682 N.E.2d 45 (Ill. 1997) ............................................................... 11, 24

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ..................................................................... 8, 17

*Walsh v. Ford Motor Co.*,
    807 F.2d 1000 (D.C. Cir. 1986) ............................................................... 9

**OTHER**

Fed. R. Civ. P. 23 ..................................................................... *passim*

AutoZone, Inc., AutoZone Parts, Inc., and AutoZone Stores, Inc., ("AutoZone")[1] respectfully submit this opposition to Plaintiffs' Motion for Class Certification. Dkt. 122. Plaintiffs have failed to satisfy any of the requirements under Fed. R. Civ. P. 23, for either a nationwide class or Illinois subclass. For the reasons stated below, AutoZone respectfully requests that Plaintiffs' motion be denied in its entirety. Given the issues implicated by Plaintiffs' motion, oral argument is requested.

## INTRODUCTION

This case, concerning an aftermarket timing chain tensioner that S.A. Gear ("Gear") supplied to AutoZone, has been pending for over two years. Despite Plaintiffs' claims of a pervasive, dangerous defect in the tensioner ("Gear Part 9422" or "Part"), only two Plaintiffs, Rhonda LeMaster and Steve Williamson, have made claims. The lack of interest in this case exists because Gear Part 9422 is not defective.

AutoZone has sold over 40,000 units of Gear Part 9422 since 2009. Since then, customers have made a miniscule number of money damage claims—less than .5% of all net sales—many which are the result of user error in installation. To overcome this impediment to liability and class certification, Plaintiffs fabricate an umbrella "defect" in the Part—the placement of an "O-ring"—which Plaintiffs have failed to support with any admissible, common evidence, let alone the expert evidence required by the Seventh Circuit. No other class member has alleged the O-ring issue upon which Plaintiffs' motion for class certification is predicated.

It is not surprising that Plaintiffs offered no expert evidence of a defect, because there is no defect. If the Part, as alleged, was uniformly defective, did not fit or function in the engine,

---

[1] AutoZone Parts, Inc. alone purchased and sold the part at issue in this litigation. For purposes of opposing class certification, the AutoZone Defendants are collectively referenced as AutoZone unless further distinction is needed.

1

was not interchangeable with the original equipment ("OE") part, and did not meet or exceed the performance of an OE part, it would have failed 100% of the time, in exactly the same manner.

This case is unsuitable for class certification. Williamson and LeMaster, both Illinois residents, seek to certify factually and legally disparate warranty, contract, consumer fraud, common law fraud, strict liability, and unjust enrichment claims on behalf of a nationwide class defined as everyone "who purchased" the Part "for use in the Chrysler 2.7L V-6 engine…at any time prior to the date of class certification." Dkt. 122. Under Plaintiffs' class definition, LeMaster is not a class member because she did not purchase the Part from AutoZone, only Williamson did. And though Williamson purchased the Part, he did not own or drive the car in which the Part was "used." Neither Williamson nor LeMaster can bring claims on behalf of non-Illinois residents. Neither can bring claims for injunctive relief because neither is using the Part, and cannot claim they have suffered from an ongoing deception or risk of future injury. These facts alone establish that Williamson and LeMaster are both inadequate representatives under Rule 23(a)(4). Class certification must be denied on this basis alone.

The problems with Plaintiffs' certification attempt do not end there. Certification poses serious choice of law, ascertainability, and manageability issues. The Seventh Circuit repeatedly has overturned certification of nationwide breach of warranty, consumer fraud, and products liability classes, because the dissimilar factual settings and legal claims of class members precludes a finding of common injury. An Illinois class fares no better, because both of Plaintiffs' class definitions encompass potentially thousands of individuals who have suffered no injury at all, because the Part has been installed in thousands of operable, running vehicles. Plaintiffs' proposed nationwide and Illinois class fails as a matter of law because Plaintiffs have

not met their burden and demonstrated this case can be tried as a class action on any scale. Their motion must be denied.

## BACKGROUND

### I.     THE TIMING CHAIN TENSIONER AND THE CHRYSLER/DODGE ENGINE

Gear Part 9422 is an aftermarket part designed to fit and function in a Chrysler 2.7 liter interference engine, a type of high performance engine. Ex. A, Expert Report of David Hallman at 9 ("Hallman").[2] The 2002 Chrysler Sebring model, which LeMaster purchased used in 2010, was one of many beset with "serious [oil] sludge" problems and which were part of a prior class action. Ex. A, Hallman at 9; Ex. H, Williamson at 50:19-25. As Williamson admitted, "the engine is notorious for being a (#@&%! Engine." Ex. C, Declaration of Larry Arthur ("Arthur Decl."), ¶¶ 11-16, & Ex. 2; *see also* Ex. F, Tucker Dep. at 34:21 – 36:10; 38:4-8.

The Part is a "bit player" in a system meant to keep the engine camshaft and crankshaft in mechanical time. Ex. A, Hallman at 4 & Figs. 27-29; Ex. B, Expert Report of Stephen Batzer at 13 ("Batzer"). This system includes the water pump, timing chain, timing chain tensioner, chain tensioner arm, and chain guides. Ex. A, Hallman at 4. The "water pump…is driven by the engine timing chain which in turn keeps the engine camshafts and crankshaft in mechanical time." *Id.* A "timing chain and gears are parts that will wear out over time and mileage and will eventually need to be replaced." *Id.* at 10. Timing malfunctions do not occur suddenly, because although "an engine can stop suddenly typically there's warning in advance of it happening." Ex. E, Hallman Dep. at 40. This is consistent with Williamson's personal experience. Ex. C, Arthur Decl. Ex. 2.

AutoZone does not design or manufacture the Part, a fact that Plaintiffs have refused to acknowledge. Ex. D, Declaration of Scott Brack ("Brack Decl.") ¶ 3. Rather, Gear supplies the

---

[2] All declarations, expert reports and exhibits are attached to the April 28, 2017 Affidavit of Michael R. Cashman.

Part to AutoZone, under a vendor agreement whereby Gear agrees that the Part conforms to OE specifications in manufacturing and material. *Id*. AutoZone then sells the Part under AutoZone's Duralast brand, to both do-it-yourself (DIY) customers at AutoZone's nationwide retail locations, and to commercial accounts (such as garages). Ex. D, Brack Decl. ¶ 7-10.

The Part has been manufactured for and supplied to Gear by three different manufacturers. Ex. J, SAGEAR0001-6; Ex. G, Abdallah Dep. 41:21 – 42:5; Ex. F, Tucker Dep. at 29:7-11. Top Line is the current manufacturer of the Part and has been since August 2013. Ex. F, Tucker Dep. at 73:2–77:9. The Part "comes from the manufacturer to S.A. Gear, the distributor, to AutoZone, the retail chain. From AutoZone it can go to one of two places, either a commercial repair shop, who usually knows what they're doing, or a consumer, who typically doesn't know how to install the part." (*Id*. at 81-82). In the warehouse, Gear can tell the difference between the Parts supplied by the three manufacturers based on characteristics such as the "coloration of the metal," (*Id*. at 96, 102-04), and when the Part was shipped. Ex. J, SAGEAR 00001-6.

AutoZone provides a 90 day warranty and will refund the purchase price or replace the part, no questions asked. Ex. D, Brack Decl. ¶¶ 5-6. AutoZone does not track the reasons for returns under its warranty. Ex. D, Brack Decl. ¶¶ 11-13. Alternatively customers can make a money damage claim for submission to the vendor. Ex. D, Brack Decl. ¶ 14; Ex. C, Arthur Decl. ¶¶ 5-16. AutoZone facilitates the claim process by, *inter alia*, informing the customer what supporting materials are required and most likely to result in an accepted claim. Ex. C, Arthur Decl. ¶¶ 5-10. Between 2009 and 2015, about fifteen DIY customers, including Williamson, made money damage claims to Gear on Part 9422 via the AutoZone claim process. Ex C, Arthur Decl. ¶ 7.

4

## II.     WILLIAMSON'S INDIVIDUALIZED EXPERIENCE.

The two Parts Williamson purchased from AutoZone, as he himself admitted, "failed in different manners." Ex. C, Arthur Decl. Ex. 2. In both instances, Williamson knew that he was purchasing an aftermarket auto part, and not an original equipment ("OE") part. Ex. H, Williamson Dep. at 70:12 – 74:22. Prior to purchasing the Part, he did not read any information or do his own research, but rather went into the local AutoZone store, and asked for a tensioner that fit the Sebring. *Id.* at 90:14 – 91:20.

Williamson installed the Part after he replaced the water pump in LeMaster's Sebring in October 2012. At the time, the ten-year old car had 156,000 miles on it. *Id.* at 55:5-23. Williamson replaced only the timing chain tensioner, not any of the other timing components such as the timing chain without correctly assessing the wear on the other parts. *Id.* 70:15 – 71:11; Ex. A, Hallman at 10-11; Ex. C, Arthur Decl. ¶¶ 13-15. Subsequent expert inspection revealed that the timing chain was significantly worn and stretched by at least 1.41", which alone could cause engine damage. Ex. A, Hallman at 11.

After Williamson installed the first Part, he noticed a clattering in the engine. Ex. C, Arthur Decl. Ex. 2; Ex. H, Williamson at 95:1 – 96:15. Although Williamson has since spoliated the components that would allegedly have made it possible to verify his claim, "clattering" is consistent with a worn out timing chain. Ex. A, Hallman at 11. Williamson removed the first Part, and exchanged it at the same AutoZone store for a new one under the AutoZone limited warranty. Williamson again chose to replace only the tensioner; despite the "chatter" in the chain Williamson did not replace any other timing components. Ex. H, Williamson at 76:4-21; 95:1 – 96:15, 179:1 – 180:20; Ex. C, Arthur Decl. Ex. 2.

After driving the car for approximately 400 miles and five days with the second Part, he began to "hear something." Ex. C, Arthur Decl. Ex. 2. The engine stalled out, but Williamson never determined how the engine actually failed. Ex. A, Hallman at 11.

Williamson believed the engine "was blown" and thereafter submitted a money damage claim to Gear through AutoZone. Ex. H, Williamson at 139:1 – 140:10; 178-180; Ex. C, Arthur Decl. ¶¶ 12-15. He sought compensation for the cost of a used replacement engine that he had purchased. Ex. H, Williamson at 139:1 – 140:10; Ex. K, AZ000117-124. Even though he was in the process of making a claim relating to engine damage, he spoliated the alleged evidence by discarding the engine, except a partial cylinder head assembly. That portion of the engine showed that "the mechanical timing was correct." Ex. A, Hallman at 12.

AutoZone forwarded Williamson's money damage claim to Gear. Per procedure, AutoZone and Gear requested that Williamson provide all of the timing components so that his complaint could be adequately investigated. Ex. C, Arthur Decl. ¶¶ 12-15. Williamson refused. Ex. K, AZ000124; Ex. H, Williamson Dep. Ex. 18; Ex. H, Williamson Dep. Ex. 19; Arthur Decl. ¶13. AutoZone sent Gear's claim denial to Williamson in January 2013, reporting that "they have found the part not to be defective." Ex. H, Williamson Dep. Ex. 19. Gear denied the claim because Williamson had not provided all of the timing components. Ex. C, Arthur Decl. ¶ 13.

Disappointed with the Gear denial of his claim, Williamson initiated this lawsuit alleging his subsequent investigation of the Part revealed an inherent defect with the external O-ring, or, alternatively, with the internal O-ring. Williamson is thus far the only person to make this claim, despite his and his counsel's attempt to solicit other plaintiffs through the internet and on industry chat boards. Ex. H, Williamson Dep. Exs.7 & 8; Ex. C, Arthur Decl. ¶ 20.

## III.    THE PART IS NOT DEFECTIVE OR UNSUITABLE FOR USE.

All of Plaintiffs' allegations turn on an alleged defect regarding the placement of the O-ring. Pl. Mem. at 3. Williamson's amateur investigation of the Part, however, lacked the rigor required to prove this allegation. Ex. A, Hallman at 3-5. The Part is not inherently defective and "any alleged failure could be due to multiple or unrelated factors, including engine age and wear, improper installation or failure to replace other wear parts such as the timing chain and gears." Ex. A, Hallman at 3; Ex. B, Batzer at 13.

A dimensional difference between the OE Part and the aftermarket part is not probative of a defect. Ex. A, Hallman at 12-14; Ex. B, Batzer at 8-13. There is no evidence that the Part did not perform the same fit and function as the OE and other aftermarket tensioners. If the Part did not perform these functions, it would have failed 100% of the time. Ex. C, Arthur Decl. ¶ 16.

Williamson installed two Parts "on a well-worn timing chain…in a worn tensioner bore" and even then, both Parts were able "to maintain chain tension under those adverse conditions." Ex. A, Hallman at 10. Hallman's investigation of the parts that Williamson assembled after he made his claim to AutoZone demonstrates, in fact, that irrespective of where the external O-ring groove sits on the Part, "similar damage to the examined O-rings" existed "regardless of mounting location on the tensioner body. This indicates that the O-rings were not damaged by the specific location of the groove on the body but by normal wear." *Id*. Ex. A, Hallman at 13.

Further, the reported claims on the Part are so low as to be nonexistent. Claims data show that AutoZone submitted 149 warranty inspection claims to Gear between 2009 and 2015; fifteen from DIY customers. Ex. C, Arthur Decl. ¶¶ 17-19. This means that AutoZone has experienced a less than .5% reported claims rate for economic damages allegedly caused by the Part. Ex. A, Hallman at 9. These reported claims further show that reasons for the alleged failures varied, and included user improper installation and activation of the Part. Ex. C, Arthur Decl. ¶ 16.

Williamson is the only claimant to have later alleged that the different placement of the O-ring groove made the Part fail. *Id.* ¶ 20.

## ARGUMENT

### I.     STANDARDS GOVERNING CLASS CERTIFICATION

A case may be certified for class action treatment only if, after "rigorous analysis," it is clear the class satisfies the four bedrock requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy—and at least one of the conditions of Rule 23(b). Fed. R. Civ. P. 23(a)(1)-(4), 23(b)(1)-(3), 23(e); *see also Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013). In addition, Plaintiffs must show: (1) that an identifiable class exists, and (2) that the named representatives are members of the class. *Saltzman v. Pella*, 257 F.R.D. 471, 474 (N.D. Ill. 2009) (citations omitted). The proponent of a class action has the burden of showing that each of the requirements of Rule 23 is met. *Oshana v. Coca Cola,* 272 F.3d 506, 513 (7th Cir. 2006).

"Certification and merits cannot always be separated," *Randall v. Rolls-Royce Corp.*, 637 F.3d 818, 821 (7th Cir. 2011), because Rule 23 "does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "[W]hen factual disputes bear on issues vital to certification…the court must 'receive evidence ... and resolve the disputes before deciding whether to certify the case.'" *Parko v. Shell Oil Co*., 739 F.3d 1083, 1085 (7th Cir. Ill. 2014) (citing *Szabo v. Bridgeport Machines, Inc*., 249 F.3d 672, 676 (7th Cir. 2001) and *Comcast*, 133 S. Ct. at 1432)); *see also Suchanek v. Sturm Foods*, 764 F.3d 750, 758 (7th Cir. 2014) (noting court must "assess whether the class allegations are satisfied through evidentiary proof"); *In re IKO Roofing Shingle Prods. Liab. Litig.*, 757 F.3d 599, 604 (7th Cir. 2014) (stating district court has to get "numbers" relating to failure rates "right" in determining whether to certify)).

## II.   SERIOUS CHOICE OF LAW PROBLEMS PRECLUDE CERTIFICATION OF A NATIONWIDE CLASS.

Plaintiffs seek to certify a nationwide class based on the following state law claims: express warranty, implied warranty, the Illinois Consumer Fraud Act (ICFA), common law fraud, strict liability, and unjust enrichment. Plaintiffs' improper request for nationwide certification runs headlong into a long line of cases where the Seventh Circuit has reversed certification of nationwide classes because they "pose[] serious problems about choice of law, the manageability of the suit, and thus the propriety of class certification." *Szabo*, 249 F.3d at 674 (7th Cir. 2001); *see In re Aqua Dots Prods. Liab. Litig.,* 654 F.3d 748, 751 (7th Cir. 2011). A nationwide consumer class is not manageable, and cannot be certified, when it would depend on the application of state law from multiple jurisdictions. *In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 288 F.3d 1012 (7th Cir. 2002).

### A.   Substantive Conflicts In The Various State Laws Preclude Certification.

All of Plaintiffs' claims—even their Magnuson-Moss Act claim—rest on state law. *In re GMC Dex-Cool Prods. Liab. Litig.* , 241 F.R.D. 305, 315 (S.D. Ill. 2007) (citing *Walsh v. Ford Motor Co*., 807 F.2d 1000, 1012-1014 (D.C. Cir. 1986)). Thus, even if Plaintiffs had standing to bring claims on behalf of non-Illinois residents (which they do not), the substantive law of all fifty states must be scrutinized to determine whether they conflict. *GMC*, 241 F.R.D. at 315. Each state's choice-of-law rules also apply. *Szabo*, 249 F.3d 672, 674 (stating common law fraud claims would "likely be [governed] by the state in which the statements were made" and denying nationwide certification of single plaintiff's fraud and warranty claims). Plaintiffs have failed to

provide any analysis, let alone the comprehensive analysis of each of the fifty state's laws that is required at this stage.[3]

For example, this Court has previously noted that "in cases involving alleged breach of warranty, the state where goods were delivered and where injury occurred has the most significant relationship for conflict of laws purposes…it is the states where the members of the proposed class reside…that have the most significant relationship to the class claims." *In re GMC*, 241 F.R.D. at 319. *GMC* declined to certify a forty-seven state breach of warranty class, holding that "the UCC is subject to important variations from state to state," and that variations in the reliance element precluded certification. *Id.* at 319 (finding "at least three distinct approaches to the question of reliance as an element to a claim for breach of an express warranty"). As to reliance, "a small minority of states," including Illinois, require reliance, but "create a rebuttable presumption of reliance by a buyer." *Id.* at 320. Similarly, this Court would need to determine which states enforce disclaimers or limitations of implied warranties, and which require manifestation of a defect (for either an express or implied warranty). *E.g., Tokar v. Crestwood Imports, Inc*., 532 N.E.2d 382, 388 (Ill. App. Ct. 1st Dist. 1988).

With respect to consumer fraud, Plaintiffs have not moved for state-specific consumer fraud subclasses (and could not, without representatives from each state). Nor can they sweep out-of-state citizens into the umbrella of their ICFA claim, because the ICFA does not apply extraterritorially. *E.g., Avery v. State Farm Mut. Ins. Co*. 835 N.E.2d 801, 854-55 (Ill. 2005) (ICFA claims could only be asserted by persons "whose vehicles were assessed and repaired in Illinois"). "State consumer-protection laws vary considerably, and courts must respect these differences rather than apply one state's law to sales in other states with different rules."

---

[3] To the extent Plaintiffs attempt to do so on reply, AutoZone reserves the right to strike or to contest this belated showing, or request further briefing.

*Bridgestone*, 288 F.3d at 1018. In *Bridgestone*, the court addressed whether class certification was proper in a case involving defective tires that "experienced an abnormally high failure rate" and were recalled. *Id.* at 1014-15. After analyzing choice of law principles and manageability issues, the Seventh Circuit reversed the district court's certification of the classes, recognizing that "[n]o class action is proper unless all litigants are governed by the same legal rules." *Id.* at 1015. A nationwide ICFA class runs thus afoul of Seventh Circuit and Illinois binding precedent.

Conflicts also exist with respect to unjust enrichment. *Clay v. Am. Tobacco*, 188 F.R.D. 483, 501 (S.D. Ill. 1999); *see also In re Sears, Roebuck & Co.*, Nos. 05-4742 & 05-2623, 2006 U.S. Dist. LEXIS 92169, at *1 n.3 (N.D. Ill. Dec. 18, 2006) (dismissing claims of out-of-state plaintiffs seeking relief under Illinois law and stating "[i]t is clear just from our review of Illinois law that unjust enrichment is a tricky type of claim that can have varying interpretations even by courts within the same state, let alone amongst the fifty states"). "The actual definition of 'unjust enrichment' varies from state to state." *Clay*, 188 F.R.D. at 501. Many states do not recognize the theory of unjust enrichment advanced here, which allows a tort-like recovery where "the unjust enrichment allegations sound in tort." Dkt. 117, Jan. 23 Order at 16; *see also Clay*, 188 F.R.D. at 501.

Finally, the strict liability claims cannot be certified on a classwide basis. "Even if the claims were susceptible to classwide proof, the [strict liability] elements vary from state to state." *Clay*, 188 F.R.D. at 501-502 (internal citations omitted). Moreover, some states, like Illinois, do not permit tort recovery alongside economic damages in the absence of "a sudden and calamitous occurrence" that damaged something other than the defective product itself. *Trans States Airlines v. Pratt & Whitney Can.*, 682 N.E.2d 45, 54 (Ill. 1997). In light of the significant variations in state law, the Court may not certify a nationwide class.

**B.      A Nationwide Class is Not Ascertainable.**

A class must be "defined clearly and based on objective criteria," *Mullins*, 795 F.3d at 659, "because the court needs to be able to identify who will receive notice, who will share in any recovery, and who will be bound by a judgment." *Id.* at 660. "To avoid vagueness, class definitions generally need to identify a particular group, harmed during a particular time frame, in a particular location, in a particular way." *Id.*

Plaintiffs' class definition fails for vagueness. No specific harm in a particular time frame is identified. Each state's statute of limitations, applicability of discovery rule, and definition of who can sue under the various warranty, products liability, and consumer protection laws (individuals or businesses), all impact how a class should be defined and who is a member of the class. Plaintiffs have failed to show how these variances in state law include or exclude "purchasers" of the Part from the classes as defined. Their failure to show the class is ascertainable is fatal to their nationwide class action claim. *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012).

## III.    PLAINTIFFS ARE INADEQUATE REPRESENTATIVES.

Rule 23(a)(4)'s adequacy requirement tests (1) whether the named plaintiffs and their counsel lack conflicting or antagonistic interests compared with the class, (2) whether the class representative is sufficiently interested in the outcome of the case, and (3) whether class counsel is experienced, competent, qualified, and able to conduct the litigation vigorously. Fed. R. Civ. P. 23(a)(4). The typicality and adequacy inquiries often overlap: "if a [named plaintiff's] claim is atypical, he is not likely to be an adequate representative[.]" *Robinson v. Sheriff of Cook Cty.*, 167 F.3d 1155, 1157 (7th Cir. 1999); *see also Randall*, 637 F.3d at 821 ("certification may be denied because the named plaintiff's claim is atypical of claims of the other members of the class" or where there is possibly a complete defense to his claim).

**A.      Plaintiffs' Claims and Experience Are Unique.**

The record establishes that this is a case "where few, if any, of the putative class members share the named representative's grievance against the defendant….A person whose claim is idiosyncratic or possibly unique is an unsuitable class representative." *Suchanek v. Sturm Foods*, 764 F.3d 750, 758 (7th Cir. 2014) (citing *Thorogood v. Sears, Roebuck & Co*., 547 F.3d 742, 747 (7th Cir. 2008) and *Oshana*, 472 F.3d at 514).

In *Suchanek*, the Seventh Circuit held that the named representatives' interests and legal claims aligned with those of the putative class, especially because they "proffered evidence to show the overwhelmingly negative response to the [coffee] product, the flood of complaints that followed the introduction of [the product] and numerous surveys that shed light on the preferences of [consumers] for premium (freshly brewed) coffee." 764 F.3d at 758. But the *Suchanek* court explained that certification must be denied where, as here, the named plaintiff "appeared to be the only person" in a "million-plus class that believed [the] defendant deceived consumers by using different formulae in found and bottled soda products." *Id.* (citing *Oshana*, 472 F.3d at 514). Similarly in *Thorogood*, the Seventh Circuit reversed certification because there was no "evidence that anyone in the 500,000 person class other than Thorogood believed the allegations" that a dryer's stainless steel drum was defective. *Id.*

Like *Thorogood* and *Oshana*, Plaintiffs here have shown only that their complaint is "idiosyncratic" and unique to them. Neither Plaintiffs nor their counsel proffer a "flood of complaints" regarding the alleged defect, or provide expert evidence, surveys, or third-party analyses demonstrating any consumer's belief that the Part was defective or that representations about the Part were misleading. *See Suchanek*, 764 F.3d at 758; *see also Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 798 (7th Cir. 2013) (noting "many thousands of complaints of bad odors by the machines' owners"); *Pella Corp. v. Saltzman,* 606 F.3d 391, 394 (2010) (noting that class

counsel had been contacted "by over 350 consumers"). This showing is required at the certification stage, but Plaintiffs have completely failed to meet that burden.

Plaintiffs cannot overcome the utter lack of evidence for their class claims. The *Suchanek* plaintiffs offered "[n]umerous expert surveys," showing that "few consumers understood the nature of the…product." *Id.* at 1247. In sharp contrast, Plaintiffs provide exactly *one* statement from a consumer who purchased the Part from Advance Auto, not AutoZone. Pl. Mem. at 4. "Jay"—who is not a class member—discusses the placement of the O-ring, but never mentions that he was deceived or confused by any representation about the product (which, of course, AutoZone did not make to him). For the Wisconsin mechanic, Curtis Dickman, Plaintiffs offer no evidence that Mr. Dickman bought the part from AutoZone, made a claim to AutoZone, or was deceived by any representation AutoZone made. Similarly, LKQ is not an AutoZone customer, but like AutoZone, is a Gear customer. LKQ's email does not, in fact, describe any purported O-ring defect, but a "difference in machining." Pl. Mem. at 7.

Here, despite Plaintiffs' attempts to solicit potential plaintiffs through a web site devoted to the alleged defect for at least two years (promising compensation to those who made a claim),[4] no other purchasers have joined this case. The dearth of consumer complaints demonstrates the Part is not defective, a fact buttressed by Defendants' return and claims ratios, *see* Ex. D, Brack Decl. ¶¶ 9-15  and Ex. C, Arthur Decl. ¶ 16, and expert testimony. Ex. A, Hallman at 3-5; Ex. B, Batzer at 16-17. The placement of the O-ring does not make the Part defective or out of specification—it simply makes it different from the OE part. Ex. A, Hallman at 3. And, the O-ring placement was not even the cause of Plaintiffs' engine damage; rather Williamson's failure to replace the timing chain likely was. Ex. A, Hallman at 14; Ex. B, Batzer at 8-13.

---

[4] http://www.tensionerdefect.com/ (last checked April 24, 2017).

14

Without common evidence supporting their claims of a pervasive defect, Plaintiffs' experience is unique. Accordingly, they are inadequate representatives.

### B.     LeMaster Is Not A Member Of The Class.

Plaintiffs have defined both the nationwide and Illinois state law class as consisting of all persons "*who purchased* from AutoZone Defendants' timing chain tensioner[.]" Dkt. 122 (emphasis added). LeMaster did not purchase the tensioner. She is therefore not a member of either class. Additionally, at least one of the issues she will have to litigate is whether she can bring a claim at all, because she lacks standing to bring any claims requiring purchase of the tensioner, and never reviewed any of the alleged misrepresentations, whether on the internet or on the Part's packaging. Ex. I, LeMaster at 86:8-15. LeMaster's inadequacy as a representative is underscored by the fact that she had no understanding of the legal and factual allegations of the case, and testified the only reason she is a plaintiff is because *"I had to be here because I'm the owner of the car." Id*. at 84:15-16.

### C.     Neither Plaintiff Can Represent Non-Illinois Citizens or Commercial Account Holders.

Plaintiffs' class also fails for lack of representation in every state except Illinois. Williamson purchased the Part in Illinois, and lives in Illinois. The Sebring allegedly failed in Illinois. LeMaster also lives in Illinois, and registered the car in Illinois. Neither Plaintiff had a commercial account with AutoZone.

Residency, or at least a purchase in another state, is a prerequisite for all of Plaintiffs' statutory and common law claims. *See Butler*, 727 F.3d at 798 (six-state class represented by multiple plaintiffs); *Pella*, 257 F.R.D. at 474 (seven-state consumer fraud and eight-state unjust enrichment class represented by multiple plaintiffs who resided or purchased in those states). Plaintiffs simply do not have standing to sue under the laws of the other forty-nine states, and

accordingly lack standing to bring claims on behalf of non-Illinois citizens. *See, e.g., In re Yasmin & Yaz Mktg.*, 2012 U.S. Dist. LEXIS 33183, *40-41 (S.D. Ill. Mar. 13, 2012) ("Statutory standing relates to legislatively-created causes of action. Generally, the statutory standing requirement asks whether a statute creating a private right of action authorizes a particular plaintiff to avail herself of that right of action[.]"); *see also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999) (stating class certification issues that "pertain to statutory standing…may be properly treated before Article III standing" and at the certification stage). Further, commercial account holders may be subject to different claims and unique defenses—such as whether they are consumers and lack damages (because they passed on costs to end-users, who are non-ascertainble)—relating to whether they can maintain a claim at all under the same theories as Williamson.

Given their lack of standing, Plaintiffs are not adequate representatives for class members who reside or purchased the Part in other states, or for commercial account buyers.

### D.   Plaintiffs Are Inadequate Representatives Because They Have Subjected Putative Class Members' Personal Injury Claims To *Res Judicata*.

Plaintiffs are also inadequate under Rule 23(a)(4) because they have split their claims between tort and economic damages. Where "the named Plaintiffs have in fact jeopardized the class members' potential claims for personal injury damages, they would be deemed to have interests 'antagonistic' to those of the class." *Thompson v. Am. Tobacco Co., Inc.*, 189 F.R.D. 544, 550 (D. Minn. 1999); *see also Bridgestone*, 288 F.3d at 1016 ("And indeed this is not a products liability suit, since all who suffered physical injury are bound to opt out."). Because Plaintiffs have disavowed personal injury damages in their complaint, Dkt. 35, ¶ 111, they stand at odds with any class member who seeks personal injuries allegedly caused by the Part. Their class definition fails to provide a mechanism for anyone with personal injuries to opt out. *See*

16

*Saltzman*, 257 F.R.D. at 481-82 (acknowledging *res judicata* problems exist where there is no mechanism to opt out, and noting that named plaintiffs had "expressly reserved only claims for fraud by omission, saying nothing of personal injury claims or property damage claims").

Plaintiffs' jettisoning of class members who may have tort damages is prejudicial to these class members, whose claims may fall on Plaintiffs' inability to prove a defect on a classwide basis. For this reason alone, this renders Williamson and LeMaster inadequate representatives.

## IV.   PLAINTIFFS FAIL TO IDENTIFY COMMON ISSUES SUPPORTED BY COMMON EVIDENCE.

Plaintiffs also fail to carry their burden under Rule 23(a)(2). Commonality under Rule 23(a)(2) is not created by enumerating matters "common" to the claims of all class members. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011). It is not enough to show that class members "have all suffered a violation of the same provision of law." *Id.* at 350. Rather, "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury'" at the hands of the same defendant. *Id.* at 349-50 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)).

Nationwide certification is prohibited under Seventh Circuit authority. Certification of an Illinois subclass does not cure the problems with Plaintiffs' certification attempt. As drafted, Plaintiffs' proposed state law subclass includes persons who: (1) purchased the Part for personal use; (2) purchased it for commercial use and installation into cars whose owners are not ascertainable; (3) owned the car that the Part was installed in; (4) did not own the car the Part was installed in; (5) saw AutoZone's limited express warranty before purchasing the Part; (6) did not see the warranty; (7) saw the statements regarding the Part's performance; (8) did not see these statements; (9) installed the Part themselves; (10) did not install the Part themselves; (11) returned the Part before installing it and received a full refund; (12) suffered engine damage; (13)

suffered no engine damage; (14) suffered personal injuries; (15) suffered no personal injury; (16) made a claim to Gear; (17) did not make a claim to Gear; (18) removed the Part from the engine; (19) did not remove the Part from the engine; (20) sold the car that the Part was installed in; (21) did not sell the car that the Part was installed in. The vast majority of the putative class – perhaps all purchasers other than Williamson – have suffered no injury. This alone precludes certification. *Messner*, 669 F.3d at 825 ("A class should not be certified if it is apparent that it contains a great many persons who have suffered no injury at the hands of the defendant").

### A.     The Alleged Defect Does Not Present A Common Question.

Plaintiffs seem to argue that commonality is satisfied because a money damage claim impliedly alleges a product defect. This theory is contrary to the law. In *Bridgestone*, the Seventh Circuit held there was no commonality because of significant variations in the state law requirements, despite the product's defects. *Bridgestone*, 288 F.3d at 1015 ("No class action is proper unless all litigants are governed by the same legal rules.").

Similarly, commonality does not derive from the fact the Part has a "universal purpose," or "universal technical specifications and suitability issues." Pl. Mem at 12-13. These are not common issues. Plaintiffs provide no evidence, for example, that the Part was not interchangeable with tensioners manufactured by other aftermarket suppliers. If the Part did not "fit" or was not interchangeable, it would have failed in every engine it was installed in. Nor do Plaintiffs attempt to show, through expert testimony or otherwise, that the Part does not "meet or exceed" OE performance. At most, they have shown that some users of the Part may have had infrequent, unrelated issues for a variety of different reasons. *See IKO*, 757 F.3d at 603 ("In any mass production operation, defects or deviations are inevitable.").

Commonality is also defeated where more than one explanation for an alleged product failure exists, any one of which could apply to putative class members. The uncontroverted

evidence here establishes that "any alleged failure could be due to multiple or unrelated factors, including but not limited to engine age and wear, improper installation or failure to replace other wear parts such as the timing chain and gears." Ex. A, Hallman at 3. The likely cause of Williamson's engine failure was his decision not to replace all timing components, particularly the timing chain, rather than just the tensioner. Ex. A, Hallman at 2. Indeed, as Williamson admitted, the two tensioners he purchased "failed in different manners." Ex. C, Arthur Decl. Ex. 2.

Thus whether and how the Part alleged "failed" in any particular situation is inherently an individual, not common, question.

### B. Proof Of Malfunction Is Required, And Plaintiffs Have Not Provided Any.

Proof of malfunction is a prerequisite to all of Plaintiffs' claims. *E.g., In re Canon Cameras Litig.*, 237 F.R.D. 357, 360 (S.D.N.Y. 2006). An alleged difference in design, by itself, is insufficient to prove any defect or injury. *See Avery*, 835 N.E. 2d at 859 (plaintiff did not prove "actual damage" required by ICFA where he sold the truck and "received the same value for the truck that he would have receive if only OEM parts had been used in the repair"). No injury classes are uncertifiable, as even Plaintiffs' cited authority holds. *Messner*, 669 F.3d at 825 (distinguishing between certification of classes where "class members …were not harmed and those who could not have been harmed").

Plaintiffs' warranty and ICFA claims require that the alleged defect manifest itself. *Saltzman v. Pella Corporation*, 257 F.R.D. 471, 476 (N.D. Ill. 2009) (no certification of latent defects under Rule 23(b)(3)); *Tokar*, 532 N.E.2d at 388. For an implied breach of warranty of merchantability claim, the controlling question is whether the Part is merchantable, which is fundamentally a test of functionality. A mere theoretical defect or risk that the product may malfunction in the future is insufficient to state a merchantability claim. *Tokar,* 532 N.E.2d at

388. Inevitably, determining whether there has been a breach of the implied warranty of merchantability requires an examination of how a particular Part has performed in a specific vehicle and whether the vehicle is still operable.

There is no certifiable class here because Plaintiffs have failed to come forward with any common evidence that the Part malfunctioned as a result of the purported O-ring defect.

### C.    Alleged Misrepresentations Are Not Common To The Class.

Plaintiffs never identify any of the alleged misrepresentations they claim form the basis of their consumer fraud and warranty claims against AutoZone, resting instead on vague generalities from their pleadings. In fact, the language of the purported misrepresentations differed depending on who made it (Gear or AutoZone) and where it appears (in store, box or website), precluding commonality.

Plaintiffs' warranty and common law fraud claims require proof of actual reliance, and, in the case of consumer fraud, actual deception. *GMC*, 241 F.R.D. at 321 (noting that Illinois law holds that "a seller's affirmations and promises relating to goods create a rebuttable presumption of reliance by a buyer"); *Avery*, 835 N.E.2d at 861 ("[A] plaintiff must prove [she] was actually deceived by the misrepresentation in order to establish the element of proximate causation."). Neither Named Plaintiff can show this, because the uncontroverted evidence demonstrates that Plaintiffs never looked at or relied on any representation that they now claim are misleading. *E.g.*, Ex. I, LeMaster Dep. at 86:8-15; Ex. H, Williamson at 71.

But even if these facts were not dispositive of their claims—and did not defeat commonality, typicality, and adequacy—Plaintiffs have no common evidence that other consumers were deceived by any purported misrepresentations. Plaintiffs have not provided *any* evidence that they, much less other purchasers, were deceived or confused by any representations. In contrast, in *Suchanek*, plaintiffs came forward with copious survey evidence

and analyses about consumer expectations, showing that consumers had purchased a Keurig coffee maker "K-cup" from a manufacturer other than Keurig because of the misrepresentations about the product.

None of Plaintiffs' litany of "universal" statements provides common, classwide evidence of a deception about a defective Part. Mere consumer disappointment does not provide the basis for a claim. *Eike v. Allergan, Inc.*, 850 F.3d 315, 318 (7th Cir. Ill. 2017).

**D.    AutoZone's Conduct Toward The Class Does Not Present A Common Question.**

There is no evidence of common conduct by AutoZone upon which to base a certification claim. The evidence refutes the notion that AutoZone knew there was a defect in the Part (because there was none), requiring disclosure. Returns on the AutoZone 90 day warranty were consistent year over year. Ex. D, Brack Decl. ¶ 15. Monetary damage claims under the Gear 365 day warranty on the part were a meager .5% of units sold. *Compare id.* at Ex. 2 *with* Ex. C, Arthur Decl. ¶ 16 *and* Ex. A, Hallman at 9. Uncontroverted, expert analysis establishes the absence of any defect in the Part.

Against this, Plaintiffs cite three purported "complaints," other than Williamson's, about the O-ring placement. Importantly, not one of these complaints was directed to AutoZone. Plaintiffs "evidence" that Cloyes, one of the manufacturers of the Part (and former suppliers to AutoZone), was critical of Gear's Part was not produced to either Defendant until last year in this litigation. Pl. Mem. at 5-6. AutoZone certainly was not aware of it in 2012. Ex. C, Arthur Decl. ¶ 21. And AutoZone also never received the 2012 email from LKQ, one of Gear's clients and an engine rebuilder. Pl. Mem. at 6-7. Finally, the consumer complaint from a "Jay" was not made to AutoZone, but to Advance Auto Parts.

For certification purposes, the only conduct that matters is the fact that AutoZone fully refunds purchasers of the Part (or offers a replacement), and works with any customers to submit money damage claims to Gear under its 365 money damage warranty. Ex. C, Arthur Decl. ¶¶ 5-11; Ex. C, Brack Decl. Ex. 1, at p.7. AutoZone's existing, robust claims process demonstrates certification is unnecessary.

## V.   TYPICALITY DOES NOT EXIST.

Typicality requires "enough congruence between the named representative's claim and that of the unnamed representatives of the class to justify allowing the named party to litigate on behalf of the group." *Spano v. The Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011) (denying certification). In other words, typicality ensures that "the named representative's claims have the same essential characteristics as the claims of the class at large." *Oshana*, 472 F.3d at 514 (citation omitted). The presence of "even an arguable defense peculiar to the named plaintiff or a small subset of the plaintiff class may destroy the required typicality of the class as well as bring into question the adequacy of the named plaintiff's representation." *J.H. Cohn & Co. v. Am. Appraisal Assocs., Inc.*, 628 F.2d 994, 999 (7th Cir. 1980).

As a threshold matter, Plaintiffs have made no attempt to show that their legal claims could be typical for a nationwide class that applies every state's laws, and therefore have not met their certification burden. *See, e.g., Block v. Abbott Labs.*, 2002 U.S. Dist. LEXIS 5453, *13-14 (N.D. Ill. Mar. 28, 2002) (declining to certify nationwide failure-to-warn and consumer fraud class).

Plaintiffs have also failed to meet their burden for an Illinois state subclass. Plaintiffs' class definition includes purchasers whose Part has not failed, or is not within warranty. These claims would be barred by Illinois law. *Evitts v. DaimlerChrysler Motors Corp.*, 834 N.E.2d 942, 950 (Ill. App. Ct. 1st Dist. 2005) ("To allow a customer to seek damages for breach of an express

warranty beyond the limits specified in that warranty would in effect compel the manufacturer to insure all latent defects for the entire life of the product and would place a burden on the manufacturer for which it did not contract." (citing *Walsh v. Ford Motor Co*., 588 F. Supp. 1513, 1536 (D.D.C. 1984)); *Tokar*, 532 N.E.2d at 388 (stating that durational limits on express warranties apply to implied warranties as well, and that plaintiff was precluded from recovering on latent defects that manifested themselves after the expiration of the warranty period). To the extent Plaintiffs seek to modify their class definition to include only those persons whose Part failed and is still within warranty, Plaintiffs' class may be insufficiently numerous, and AutoZone reserves the right to contest numerosity.

Even for class members who may have had some kind of economic damage that they contend is linked to the Part, AutoZone is entitled to rebut the presumption of reliance on any representations purportedly showing that these were the "basis of the bargain." *In re GMC*, 241 F.R.D. at 315-316, 319 (Illinois U.C.C. "displaces the common law of contract" and discussing rebuttable presumption of reliance). AutoZone is further entitled to show that it fulfilled its contractual obligations under its warranty (if any), such as by refunding the price of purchase and paying out a claim.

To prove their fraud-based claims, Plaintiffs must establish deception, and then a "causal connection between the alleged misconduct and damages, namely that the deceptive marketing induced each class member" to purchase the Part. *Oshana*, 225 F.R.D. at 582 (applying Illinois law). "This is impossible to prove on a classwide basis[.]" *Id.* Plaintiffs are additionally susceptible to the factual defense that their ICFA and common law claims are barred because they did not rely upon or see the packaging or statements AutoZone made with respect to Part. Their claims are therefore atypical of other proposed class members. *Oshana*, 472 F.3d at 514

(district court did not abuse discretion in finding named plaintiff's claim atypical because she was subject to specific factual defenses").

Finally, in addition to the issues noted with Plaintiffs' adequacy and typicality relating to their warranty and fraud-based claims, Plaintiffs will need to address misuse defenses and questions related to damages. *Koos v. First Nat'l Bank of Peoria*, 496 F.2d 1162, 1165 (7th Cir. 1974) ("Where it is predictable that a major focus of the litigation will be on arguable defenses unique to the named plaintiff or a small subclass, then the named plaintiff is not a class representative"). Williamson cannot prove that the Part caused the engine failure and spoliated the engine parts required to prove his claims. Ex. A, Hallman at 6-7. Further, the economic loss doctrine also precludes Plaintiffs' strict liability claims. *Trans States Airlines v. Pratt & Whitney Can.*, 682 N.E.2d 45, 54 (Ill. 1997) (stating that the economic loss doctrine precludes tort recovery without a "a sudden and calamitous occurrence"). The overbreadth of Plaintiffs' proposed class and the conflicts in law preclude a finding of typicality.

## VI.   CERTIFICATION OF INJUNCTIVE RELIEF CLAIMS UNDER RULE 23(B)(2) IS INAPPROPRIATE.

Certification for declaratory and injunctive relief under Rule 23(b)(2), is not available for either a "recall" of the Part (presumably installed in operable vehicles), or to change "statements and packaging and labeling of Part 9422[.]" Pl. Mem. at 21. To secure injunctive relief on behalf of a class, Plaintiffs must personally have standing under Article III. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Standing derives from a showing of "'real and immediate' threat of future violations of their rights" and a likelihood that the Named Plaintiffs will "suffer future injury" from the challenged conduct. *Scherr v. Marriott Intern., Inc.*, 703 F.3d 1069, 1074 (7th Cir. 2013) (internal citations omitted). Plaintiffs have no standing, because they will suffer no future injury.

As noted, Plaintiffs have provided no evidence of a defect. *See Randall,* 637 F.3d at 821 (analyzing merits of claims to determine propriety of Rule 23(b)(2) certification and denying certification). They are not current users of the Part, did not rely on any written statement or representations, and could not be deceived in the future. *Burton v. Hodgson Mill, Inc*., No. 16-1081, 2017 U.S. Dist. LEXIS 53160, at *19-20 (S.D. Ill. Apr. 6, 2017) (dismissing named plaintiff's claims for injunctive relief because the named plaintiff "is unlikely to purchase a Hodgson Mills product again if she is truly harmed and deterred by the advertising conduct"); *see also Langan v. Johnson & Johnson Consumer Cos*., No. 13-1470, 2017 U.S. Dist. LEXIS 35703, *31-32 (D. Conn. Mar. 13, 2017) (denying certification under Rule 23(b)(2) because the plaintiff lacked standing to pursue injunctive relief because "she is no longer deceived by [advertising] claims…and an injunction requiring defendant to remove any misleading claim would be of no benefit to the plaintiff personally.").

Last, Plaintiffs seek certification only on behalf of past purchasers. Dkt. 122. Thus, "it is unlikely that any class member runs the risk of future harm, because [as defined] the class will not include those who could in the future unknowingly buy a product, just those who have already purchased the products." *Burton*, 2017 U.S. Dist. LEXIS 53160, at *19-20. And a Part "recall" would require that consumers remove that Part from their operable engine, which may cause greater harm. Ex. A, Hallman at 7 ("When an engine is disassembled and major repairs are performed, it is possible to unintentionally cause issues within the engine that are unrelated to the components being replaced.") Certification under Rule 23(b)(2) should be denied.

## VII.   INDIVIDUAL ISSUES PREDOMINATE OVER ANY COMMON ISSUES.

Certification of a damages class under Rule 23(b)(3) is also improper. Individual liability-related issues overwhelm any purported common issue. "Predominance is not determined simply by counting noses: that is, determining whether there are more common

issues or more individual issues, regardless of relative importance." *Parko v. Shell Oil Co*., 739 F.3d 1083, 1085 (7th Cir. Ill. 2014). For common issues to predominate, they must "overwhelm" the individual questions. *Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, 133 S. Ct. 1184, 1196 (2013). "If resolving a common issue will not greatly simplify the litigation to judgment or settlement of claims of hundreds or thousands of claimants, the complications, the unwieldiness, the delay, and the danger that class treatment would expose the defendant or defendants to settlement-forcing risk are not costs worth incurring." *Parko*, 739 F.3d at 1085 (7th Cir. Ill. 2014). In determining whether common issues predominate, the Court must resolve factual disputes that "bear on issues vital to certification." *Id.* (internal citations omitted).

### A.    Improper Installation and Misuse Is a Bar to Predominance.

Related to causation, consumer misuse precludes a finding of predominance, given that some class members may have installed the aftermarket Part themselves, in oil-sludge prone engines with many thousands of miles on them. Inquiry into each consumer's installation, car maintenance history, misuse, causation, and the damages attributable to any failure is required. "[W]here the portion of the proposed class that even suffered malfunctions appears to be tiny, plaintiffs' proposal to certify the class of all [purchasers], then determine which few suffered [failures], and then determine which of those few even arguably can attribute the [failures] to the design defect here alleged, would render the class action device nothing more than a façade for conducting a small number of highly individualized cases." *In re Canon Cameras Litig*., 237 F.R.D. 357, 360 (S.D.N.Y. 2006); *accord Block*, 2002 U.S. Dist. LEXIS 5453, at *13-14 (denying certification in failure-to-warn case where product misuse is an affirmative defense).

Undermining their claims, as well as predominance, neither Plaintiff knew what kind of repairs were done to the Sebring before LeMaster bought it, and thus neither knew whether the tensioner Williamson removed had ever been replaced. Ex. H, Williamson at 245. Williamson's

failure to replace the other timing components, including the worn chain, likely was a contributing factor in the alleged engine failure. Ex. A, Hallman at 3-5. "[I]t is undisputed that the malfunctions may have been caused by any of a variety of factors—many of which, such as customer misuse of the camera, would not result in manufacturer liability under any theory—and that determination of the actual cause of a particular malfunction would require highly individualized fact-finding." *Canon*, 237 F.R.D. at 360. Indeed, the record establishes the reported failures were very low: over 99.5% of the Parts sold since 2009 did not result in money damages request, and of those claims, the analysis showed that some customers had failed to activate or install the tensioner properly. Ex. C, Arthur Decl. ¶ 17.

### B.       Causation and Reliance Present Individual Issues.

Causation and reliance also present an insuperable bar to certification. There is no presumption of reliance for Plaintiffs' warranty claims, nor is there a presumption of deception for Plaintiffs' consumer fraud claims. Regardless, the Court will need to conduct individualized inquiries into whether any class member was damaged, because "damages are an essential element of the claim." *Saltzman*, 257 F.R.D. at 476.

Although Plaintiffs cite to *Pella* and *Butler* for the proposition that common issues of "defect" predominate, the facts here do not fit into the *Pella* and *Butler* frameworks. *Butler*, 702 F.3d 359, 360 (7th Cir. 2012) (affirming certification of state law warranty subclasses); *Pella Corp.*, 606 F.3d at 394-95 (certification of consumer fraud classes for persons who had "a manifest defect and whose windows have been replaced"). As an initial matter, neither *Pella* nor *Butler* involved certification of strict liability classes or made personal injury claims. And both involved products that are the functional equivalent of new cars, or OE parts that come installed in new cars. The window systems purchased in *Pella* were new and replaced older window systems, just like consumers replace their cars after time. The defective control board in *Butler*

27

did not replace a prior control board, but came with the original, new washer. In both those cases, the plaintiffs provided clear evidence that the manufacturer knew about the alleged defect, which had manifested itself a significant percentage of the time.

In contrast to those cases, the Part is intended to replace a "bit player" in a system installed by the OE manufacturer, in cars that have been used, usually for many miles. There exist significant, potentially exponential factual deviations between Plaintiffs' situation and the proposed class. For example, unlike Williamson, some consumers may have replaced the whole timing system, including the timing chain. These differences are meaningful. The Court will need to conduct individualized inquiries into, e.g., how and whether the Part malfunctioned; whether it caused an engine to fail; whether consumers suffered property damage caused by the Part (as opposed to other components in the timing system); and whether consumers relied upon or were actually deceived by any misrepresentations. All of these questions make this case poorly suited to certification.

### C.    Lack of Common Damages Undermines Predominance.

Plaintiffs also fail to present any coherent theory, much less model, of the damages they are seeking. "[A] damages suit cannot be certified" unless Plaintiffs come forward with a "methodology that identifies damages" resulting from the wrong. *Butler*, 727 F.3d at 799 (citing *Comcast*, 133 S.Ct. at 1433).

Here, Plaintiffs do not even state what type of damages they are seeking on behalf of the class. Plaintiffs disclaim personal injury damages. Dkt. 35, ¶ 111. Plaintiffs seem to assert that the damages would be measured by a refund of the purchase price of the Part, as well as any "consequential costs to consider …in replacing the Part." Pl. Mem. at 25. These consequential costs could, of course, overcompensate class members who have operable, running vehicles, but with high miles, meaning the labor costs to replace the Part might exceed the value of the car.

And consistent with their lack of evidence of a defect, Plaintiffs offer no evidence that a Part currently installed in an operable vehicle has diminished its value or otherwise rendered that vehicle worthless or inoperable.

In any case, a damages theory that awards damages to persons who were not actually damaged is foreclosed by the ICFA, *Avery*, 835 N.E. 2d at 859, as well as the by the state warranty and strict liability laws. *See* Section V, *infra.* Indeed, *Pella*, one of the main cases Plaintiffs rely on, excluded consumers with latent defects from the Rule 23(b)(3) damages classes, and limited certification to those consumers who had replaced windows that had manifested a defect. *Pella* 257 F.R.D. at 480-81.

To the extent Plaintiffs contend, in reply, that they also seek property damages, Plaintiffs offer no evidence that it is possible to determine these on a classwide basis—and that's because it is not possible. Individualized inquiries into whether each class member's warranty has expired and whether class members suffered property damage as a result of the Part before this expiration are required. These inquiries, in turn, would trigger the same individualized inquiries into malfunction, causation, and reliance that preclude certification in the first place. Plaintiffs have not met their burden, as required at certification, and identified a "methodology that identifies damages" resulting from the wrong. *Butler*, 727 F.3d at 799.

## VIII.   CLASS ADJUDICATION IS NEITHER MANAGEABLE NOR SUPERIOR.

Finally, this case is neither manageable as a class action nor superior to individual actions. The Seventh Circuit forbids the blunderbuss approach Plaintiffs have taken here. Apart from the variability of state law, there are serious problems for management of any class. Some purchasers of the Part would have used it without any problems, making "it difficult, if not impossible, to determine who would be entitled to a remedy."*Aqua Dots*, 654 F.3d at 751. Moreover, some purchasers of the Part may have sold the car, rendering class membership

determinations infeasible. Causation, reliance, and actual deception are essential elements of Plaintiffs' claims, and proof of these elements will require individualized inquiries for each member of the class. Plaintiffs' Motion contains no trial plan for addressing these individual questions, nor does it even hint at how any common question finding in favor of the proposed class could proceed to valid judgment. *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 773 (7th Cir. 2013) (affirming decertification of class where "the trial plan submitted by the plaintiffs was infeasible"); *Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 202 (3d Cir. 2009) (class proponents must present and support a workable plan before certification).

Additionally, individual actions, including through Gear's warranty claim process that would thrust no burden on the court, represent a viable alternative. Ex. C, Arthur Decl. ¶¶ 5-10. Further, AutoZone has refunded or replaced thousands of Parts under warranty. Ex. D, Brack Decl. ¶¶ 6-10. There is no evidence that these existing means of providing a remedy to customers alleging a failure do not work or do not benefit AutoZone's customers. Accordingly, Plaintiffs have failed to meet Rule 23(b)(3)'s manageability and superiority requirements.

## CONCLUSION

Plaintiffs seek to certify a nationwide class of persons related to an unproven defect on a product that has an infinitesimal failure rate. In the very rare instances when a customer has made a claim for money damages, AutoZone has processed that claim, and Gear has done a proper analysis, sometimes concluding that an alleged failure was really due to improper installation or other factors, sometimes issuing additional costs above refund or replacement. As explained above, Plaintiffs' motion for class certification is predicated on an allege defect that is not supported by any common evidence. Plaintiff' Motion should be denied.

Respectfully submitted,

Date: April 28, 2017                           **HELLMUTH & JOHNSON, PLLC**


By: s/ Michael R. Cashman
     Jonathan D. Jay (MN ID. No. 18603X)
     (admitted *pro hac vice*)
     Michael R. Cashman (MN ID No. 0206945)
     (admitted *pro hac vice*)
     Anne T. Regan (IL ID No. 6280977; MN ID
     No. 0333852) (admitted *pro hac vice*)
     8050 West 78th Street
     Edina, MN 55439
     Telephone: (952) 941-4005
     jjay@hjlawfirm.com
     mcashman@hjlawfirm.com
     aregan@hjlawfirm.com

**ATTORNEYS FOR DEFENDANTS
AUTOZONE, INC., AUTOZONE PARTS, LLC,
AND AUTOZONE STORES, INC.**

31

**CERTIFICATE OF SERVICE**

I hereby certify that on April 28, 2017, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all parties of record in this case.

s/ Michael R. Cashman
Michael R. Cashman

32