**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **STEVE WILLIAMSON and** | ) | |
| **RHONDA CHRISTINE LEMASTER,** | ) | |
| **On Behalf of Themselves and All Others** | ) | |
| **Similarly Situated,** | ) | |
| | ) | **Case No. 15-CV-365-SMY-DGW** |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **S.A. GEAR COMPANY, INC.,** | ) | |
| **AUTOZONE, INC.,** | ) | |
| **AUTOZONE PARTS, INC., and** | ) | |
| **AUTOZONE STORES, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiffs Steve Williamson and Rhonda Christine LeMaster filed a multi-count class action Complaint individually and on behalf of all similarly situated persons against Defendants S.A. Gear Company, Inc., Autozone, Inc., Autozone Parts, Inc., and Autozone Stores, Inc. (the "Autozone Defendants"), alleging that the defendants manufactured, distributed, advertised, and/or sold defective timing chain tensioners. Plaintiffs moved to certify the class (Doc. 122). Defendants filed responses in opposition (Docs. 132 and 134).

In support of their oppositions to class certification, Defendants relied on the testimony and opinions of Dr. Stephen Batzer, David Hallman, Steven Tucker, and Larry Arthur. Nearly three months after Defendants filed their oppositions, Plaintiffs moved to exclude Batzer and Hallman (Doc. 173). Two months later, Plaintiffs moved to exclude Tucker (Doc. 181) and

Arthur (Doc. 182).[1] Defendants have responded to those motions (Docs. 176, 177, 185, and 189). For the following reasons, Plaintiffs motions to exclude are **DENIED**.

## Background

This case involves an aftermarket timing chain tensioner ("the Part" or "Part 9422") for the Chrysler/Dodge 2.7 L V-6 engines that S.A. Gear supplied to Autozone. Autozone has sold over 40,000 units of the Part since 2009. Plaintiffs assert that the Part does not meet or exceed OEM specifications. More specifically, Plaintiffs allege that the placement of an O-ring groove and the O-ring itself are too high on the tensioner – well outside of Chrysler/Dodge/OEM specifications. They further allege that the Part does not fit properly in the engine. Plaintiffs request class certification under the Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), and seek to represent the following classes:

**Nationwide Class:**
All persons in the United States who purchased from AutoZone Defendants' timing chain tensioner for use in the Chrysler 2.7L V-6 engine (also known as the Chrysler LH engine) at any time prior to the date of class certification. Excluded from the Class are any Defendant, any entity in which any Defendant has a controlling interest or which has a controlling interest in any Defendant, and any Defendant's legal representatives, assigns and successors. Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

**Illinois Class:**
All domiciliary citizens of the state of Illinois who purchased from AutoZone Defendants' timing chain tensioner for use in the Chrysler 2.7L V-6 engine (also known as the Chrysler LH engine) at any time prior to the date of class certification. Excluded from the Class are any Defendant, any entity in which any Defendant has a controlling interest or which has a controlling interest in any Defendant, and any Defendant's legal representatives, assigns and successors. Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

## Discussion

Federal Rule of Evidence 702 provides for the admission of expert testimony that assists

---

[1] Defendants assert that Plaintiffs' motions should be disregarded as untimely. Although the Court agrees that Plaintiffs have provided no legitimate explanation for waiting months after the class certification briefing became ripe to file their belated *Daubert* motions, the Court nonetheless declines to deny Plaintiffs' motions on the basis of untimeliness alone.

the trier of fact to understand the evidence or to determine a fact in issue. Fed.R.Evid. 702. District courts have a "gatekeeping" obligation to ensure that expert testimony is both relevant and reliable. Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (2003); *Lees v. Carthage College,* 714 F.3d 516, 521 (7th Cir. 2013). Essentially, the Court must answer three questions before admitting expert testimony: (1) is the expert qualified; (2) is the expert's methodology reliable; and (3) will the expert's testimony assist the trier of fact in understanding the evidence or determining a fact in issue. *Myers v. Illinois Cent. R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010). The party offering the expert testimony bears the burden of proof as to relevance and reliability. *Brown v. Burlington N. Santa Fe Ry. Co.*, 765 F.3d 765, 772 (7th Cir. 2014) (citing *Lewis v. CITGO Petroleum Corp.,* 561 F.3d 698, 705 (7th Cir. 2009)).

When an expert's report or testimony is "critical to class certification," the Court must make a conclusive ruling on any challenge to that expert's qualifications or submissions before it may rule on a motion for class certification. *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 812 (7th Cir. 2012); *see also American Honda Motor Co. v. Allen*, 600 F.3d 813, 815-16 (7th Cir. 2010). The term critical is used broadly to describe expert testimony important to an issue decisive for the motion for class certification. If the Court has doubts about whether an expert's opinions may be critical to a class certification decision, the Court should make an explicit *Daubert* ruling. *Messner,* 669 F.3d at 812.

### Stephen Batzer and David Hallman (Doc. 173)

AutoZone retained David Hallman to assess Plaintiff Williamson's allegations that Part 9422 caused damage to Plaintiff LeMaster's engine and that the Part is uniformly defective. Hallman is an engineer with a B.S. in mechanical engineering and an M.S. in materials science

(Doc. 177-1, p. 38). He has worked as a mechanical design engineer. *Id.* at p. 4. Before receiving his degree in mechanical engineering, he worked as an auto mechanic for approximately ten years and became an ASE certified Master Automotive Mechanic. Hallman also worked for several Dodge/Chrysler dealers and performed internal transmission and engine work on Dodge and Chrysler vehicles, including the 2.7-liter engine design in Plaintiff LeMaster's car. Hallman has performed timing chain replacement and other internal engine repairs, including removing and replacing hydraulic timing chain tensioners. *Id.* at p. 4.

Hallman inspected the allegedly defective tensioner, the chain tensioner arm, and timing chain belt from LeMaster's car, the engine's cylinder head and other tensioners that Williamson had collected (Doc. 177-1, pp. 5-6). Hallman reviewed the claims of approximately 140 customers who submitted money damage claims regarding Part 9422 to Autozone, as well as sales and return data for the Part. He also reviewed the pleadings, deposition transcripts, and numerous documents produced in this matter, and a drawing provided by the Fiat Chrysler Corporation. *Id.* at 17. Hallman's report contains six opinions:

> (1) Williamson installed two separate new timing tensioners in a used and well-worn engine without performing any empirical measurement of the subject timing chain or gears. Had he done so, he would have concluded that other factors contributed to the engine failure he alleges occurred; (2) Williamson failed to perform appropriate failure diagnosis and analysis of the alleged failed engine utilizing the scientific method or any other appropriate investigative method, therefore it is not reasonable to blame an individual replacement part for the subject or any engine failure; (3) Plaintiff claims that the outer O-ring placement is the cause of the alleged "defect" in the subject tensioner. Based upon my review of the evidence, the placement of the O-ring has not been shown to be the cause of the failure in the subject engine; (4) The evidence reviewed in this matter indicates that subject tensioner design is not defective in any way, and that any alleged failure could be due to multiple or unrelated factors, including but not limited to engine age and wear, improper installation or failure to replace other wear parts such as the timing chain and gears; (5) If the subject tensioner design were defective as alleged by Williamson, the Auto Zone claims to sales ratio would far exceed 0.5% over the six years from 2009 – 2015; and (6) Aftermarket parts such as the subject timing chain tensioner are made to fit and perform as

well as, and in some cases better than the original. Even though some aftermarket parts might have a different appearance or physical dimensions, they can perform as well as, if not better than, the OEM part.

(Doc. 177-1, pp. 2- 4).

S.A. Gear retained Stephen Batzer, Ph.D., P.E. as a class certification expert (Doc. 135-2) and requested that he analyze Plaintiffs' allegations regarding Part 9422. Batzer is an engineer with a B.S. in mechanical engineering, an M.S. in manufacturing systems engineering, and a Ph.D. in mechanical engineering (Doc. 135-2, p. 3). He has over 30-years' experience in engineering – specializing as a forensic engineer and failure analyst for 15 years.

Batzer has investigated hundreds of accidents and product failures. *Id*. In performing his analysis, Batzer reviewed the Complaint, inspected the parts and exemplar tensioners provided by Plaintiff Williamson, inspected a 2002 Sebring in which an S.A. Gear tensioner was installed, reviewed the depositions taken in this case, and conducted independent research. *Id*. Based on his review, Batzer concluded that Williamson has not produced evidence that any alleged failure of the two tensioners that he installed caused any damage to the subject engine. *Id*. at 17. He further opined that there is strong reason to believe that Williamson had an oil distribution failure and not a timing chain tensioner failure. *Id*. It's also Batzer's opinion that the design of Part 9422 has not been shown to have a performance difference from OEM, nor are other users shown to have had the same experience as Williamson. *Id*. He notes that there has only been a 1/2% return rate of the Part to Autozone, which, in his opinion, is strong evidence of its fitness for use. *Id*.

Plaintiffs do not challenge either expert's qualifications. Instead, they argue that the proffered opinions of Hallman and Batzer should be excluded or not considered by the Court during the class certification stage. Plaintiffs maintain the only opinion Defendants' attempt to tie to class certification is the "return rate analysis," which speaks to the merits of the case and

should be disregarded by the Court at this juncture. Plaintiffs also assert that Hallman and Batzer's opinions that Part 9422 is not defective and/or did not cause damage to LeMaster's vehicle should be excluded because, at the class certification stage, merits are not at issue.

Although, the issue of class certification is largely independent of the merits, a court may "take a peek at the merits before certifying a class." *Schleicher v. Wendt*, 618 F.3d 679, 685 (7th Cir. 2010). This is because Rule 23 does not merely set forth a pleading standard. *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 131 S. Ct. 2541, 2548, 180 L. Ed. 2d 374 (2011). Therefore, when factual disputes bear on issues vital to certification, such as whether the lawsuit should be allowed to be litigated as a class action, the court must "receive evidence ... and resolve the disputes before deciding whether to certify the case." *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014) citing *Szabo v. Bridgeport Machines, Inc.,* 249 F.3d 672, 676 (7th Cir. 2001); *see also Butler v. Sears, Roebuck & Co.,* 727 F.3d 796, 800–01 (7th Cir. 2013).

This "peek" is limited to aspects of the merits that affect the essential decisions under Rule 23. *Id.* For example, if some aspect of the merits also shows that individual questions predominate over common ones, certification may be inappropriate. *Id.* Here, Defendants contend that Hallman and Batzer's opinions are relevant to the determination of whether Plaintiffs meet Rule 23's numerosity, commonality, typicality, and predominance requirements. They maintain Plaintiffs' claims are unique to them and that there is no evidence that other consumers believe Part 9422 is defective or the representations about the Part were misleading. Accordingly, a *Daubert* analysis is warranted.

Regarding Hallman's opinions, Plaintiffs do not take issue with his methodology or the substance of his opinions, other than his fifth opinion regarding the claims rate. The claims rate is the ratio of claims submitted to Autozone for money damages to total parts sold (i.e., total

money damage claims over total part sold). In reaching his fifth opinion, Hallman calculated the claims rate by taking the total number of claims made to Autozone by commercial and do-it-yourself ("DIY") customers, divided by the total sales of Part 9422 to commercial and DIY customers. This calculation was based on his review of the claims submitted by customers.

Plaintiffs argue that Hallman's methodology is flawed because he focuses on the claims rate rather than the return rate. The return rate is the measure of parts sold to those returned within 90 days of purchase. Plaintiffs assert that claims are not a measure of defect, but merely reflect the number of people who sought money damages from Autozone. They contend that determining the accurate number of people who had a problem with the design of Part 9422 would require the inclusion of all customers who returned the Part – not just those who filed a claim.

Plaintiffs' arguments are not directed at Hallman's methodology – his calculation and choice of numerator and denominator – but with his assertion that the claims rate further supports his conclusion that Plaintiffs lack evidence of a common defect. Plaintiffs also don't challenge the reliability of Hallman's calculation of the claim rate. They simply claim that a more accurate way to determine the alleged defect rate would be to use the return rate.

*Daubert* demands reliability, not perfection. As the Seventh Circuit has recognized, the reliability inquiry under *Daubert* "is primarily a question of the validity of the methodology employed by an expert, not the quality of the data used in applying the methodology or the conclusion produced." *Manpower, Inc. v. Ins. Co. of Pennsylvania,* 732 F.3d 796, 806 (7th Cir. 2013). Questions related to the quality of the underlying data and the expert's conclusions are not a proper consideration in assessing the reliability of the expert's methodology. *Id.*

In *Manpower,* the district court excluded plaintiff's forensic accounting expert's testimony as to the plaintiff's business interruption and extra expense losses. *Id.* at 801. The court concluded that the expert's methodology was accurate, but excluded the testimony because he did not "use reliable methods when selecting the numbers used in his calculations – specifically projected revenues and projected total expenses." *Id.* The court explained that "[o]nly a more thorough analysis of the reasons for the growth would have supported [the expert]'s choice of a projected growth rate." *Id.* On appeal, the Seventh Circuit concluded the district court abused its discretion in excluding the expert and specifically found that the district court's reliability inquiry should have ceased after determining the expert's methodology was reliable. *Id.* at 807. The Seventh Circuit reasoned, "the selection of data inputs to employ in a model is a question separate from the reliability of the methodology reflected in the model itself." *Id.*

Plaintiffs' quibble with the data Hallman utilized goes to the weight of his testimony, not to its admissibility. *See Daubert*, 509 U.S. at 596. The soundness of the factual underpinnings of Hallman's analysis and the correctness of his conclusions based on that analysis are factual matters to be determined by the trier of fact. *Id.* Plaintiffs are free to attempt to undermine the persuasiveness of Hallman's conclusions. However, the Court is satisfied that his methodology is sound; he properly supported his conclusions based on his review of the evidence and claims submissions. Accordingly, Plaintiffs' motion is denied as to Hallman.

As was the case with Hallman, Plaintiffs' quarrel with Batzer is unrelated to his methodology; it is with his conclusions. Batzer testified that based on the returns of the Part, he is unpersuaded that Williamson's complaints regarding the alleged defect in the Part was a common problem. Batzer relied on the testimony of Steven Tucker, the Vice President of Sales and Marketing for S.A. Gear, in reaching his opinion that Plaintiffs' allegations regarding Part

9422 are unique. Specifically, Tucker testified that customer returns of Part 9422 were never sufficiently high to be brought to his attention as problematic. He further testified that less than 1/2% of customers claimed dissatisfaction with the Part. Plaintiffs maintain that Batzer's reliance on Tucker's testimony renders his opinions unreliable.

Again, Plaintiffs' arguments miss the mark. An expert is free to rely on data and other information supplied by third parties. *Dura Automotive Systems of Indiana, Inc. v. CTS Corporation,* 285 F.3d 609, 612 (7th Cir. 2002). Analyzing data assembled by others is neither illicit nor unusual, even if the data were prepared for litigation by an interested party. *Loeffel Steel Products, Inc. v. Delta Brands, Inc.,* 372 F.Supp.2d 1104, 1119 (N.D. Ill. 2005); *Walker v. Soo Line Railroad Co.,* 208 F.3d 581, 588 (7th Cir. 2000). Plaintiffs' disagreements with Tucker's testimony are not a justifiable basis to exclude Batzer's opinions. Plaintiffs may certainly cross-examine Batzer an attempt to discredit his reliance on Tucker's testimony. But again, their arguments go to the weight of Batzer's testimony, not to its admissibility. *See Daubert*, 509 U.S. at 596. Therefore, Plaintiffs' motion as to Batzer is also denied.

### Steven Tucker (Doc. 181) and Larry Arthur (Doc. 182)

Steven Tucker is the Vice President of Sales and Marketing for S.A. Gear, Inc. and has held that position since September 2002. Tucker submitted a 2-page Affidavit in support of S.A. Gear's opposition to class certification. Larry Arthur has been Autozone's Product Liability Supervisor for Merchandise Claims since 2012. He is responsible for developing claim guidelines and supervising all claim agents for Autozone. Arthur submitted a Declaration in support of Autozone's opposition to class certification. Plaintiffs move to exclude Tucker and Arthur, asserting that (1) they were not disclosed as expert witnesses and (2) their testimony

contains expert opinions, not mere facts or lay opinion testimony. Defendants counter that these witnesses provided permissible factual testimony based on their personal knowledge.

Rule 701 permits lay witness testimony in the form of opinions or inferences only when they are "(a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Opinion testimony by a business owner or officer may be permitted without qualifying that witness as an expert because the testimony is based on personal knowledge. *Compania Administradora de Recuperativos de Activos Administradora de Fondos de Inversion Sociedad Anonima v. Titan Int'l. Inc.,* 533 F.3d 555, 560 (7th Cir. 2008). In other words, "[s]uch opinion testimony is admitted not because of experience, training or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his or her position in the business." *Id.* (quoting Rule 701, advisory committee notes (2000)).

This rule has been applied to senior employees with particularized knowledge of an employer's business, especially where the knowledge is based on a review of records prepared and kept in the ordinary course of business, or perceptions based on industry experience. *See e.g. Zenith Elec. Corp. v. WH–TV Broadcasting Corp.,* 395 F.3d 416, 420 (7th Cir. 2005) (Rule 701 allows managers to offer the facts underlying projections without the need to qualify as an expert); *U.S. v. Hamaker,* 455 F.3d 1316, 1331 (11th Cir. 2003) (experienced financial analyst did not need to be classified as an expert witness where he "simply added and subtracted numbers from a long catalogue of defendant's records, and then compared those numbers in a straightforward fashion").

Tucker clearly possesses sufficient personal and particularized knowledge to testify as a witness under Rule 701 by virtue of his position as the Vice President of Sales and Marketing for S.A. Gear. He has held the position since 2002, and as a result of his involvement with discovery in this case, Tucker is familiar with Plaintiffs' claim of defect with respect to the Part. Based on his personal knowledge, he testified as follows:

> S.A. Gear has purchased Part 9422 from three different vendors since 2002. Only one of those vendors, Zan-Power Co., Ltd. ("Zan-Power"), manufactured the Part with the external O-ring in the location which Plaintiffs claim makes the Part defective. S.A. Gear purchased the Part from Zan-Power from December 2010 to August 2013, when it switched to another vendor. S.A. Gear sold a total of approximately 15,550 units of the Part manufactured by Zan-Power, to various customers including Autozone. The individual packaging of the Part does not identify the original manufacturer who made the Part for S.A. Gear. There is no way to identify a particular Part as having been manufactured by Zan-Power without performing a physical inspection and measurement of the Part, which cannot be performed while the Part is installed in an engine.

(Doc. 133-8).

Similarly, Arthur's Declaration is based not only on his personal experience handling Autozone's claims from the Part, but also on his personal experience with Plaintiff Williamson's claim (Doc. 135-3). Arthur states in his Declaration that he is familiar with the Autozone merchandise claim process and was personally involved in the investigation of Plaintiff Williamson's claim when it was submitted. He also personally reviewed the 146 customer (both commercial and do-it-yourself) claims related to the Part. Based on his review of the claims, Arthur testified that there was no single consistent problem alleged in the claims. He also testified that the measure of money damage claims submitted to Autozone on Part 9422 was low. He reached this conclusion by reviewing the claims submitted.

As both Tucker and Arthur relied on their personal knowledge and based their testimony on their reviews of Defendants' business records, a sufficient foundation for their lay opinion

testimony has been made. *Allied Systems,* 304 F.3d at 792. Accordingly, Plaintiffs' motions are denied in their entirety.

**IT IS SO ORDERED.**

**DATED: March 29, 2018**

> **s/ Staci M. Yandle**
> **STACI M. YANDLE**
> **United States District Judge**