## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **STEVE WILLIAMSON and** )<br>**RHONDA CHRISTINE LEMASTER,** )<br>**On Behalf of Themselves and All Others** )<br>**Similarly Situated,** )<br> )<br>**Plaintiffs,** )<br> )<br>**vs.** )<br> )<br>**S.A. GEAR COMPANY, INC.,** )<br>**AUTOZONE, INC.,** )<br>**AUTOZONE PARTS, INC., and** )<br>**AUTOZONE STORES, INC.,** )<br> )<br>**Defendants.** ) | **Case No. 15-CV-365-SMY-DGW** |

## <u>MEMORANDUM AND ORDER</u>

**YANDLE, District Judge:**

Plaintiffs Steve Williamson and Rhonda Christine LeMaster, individually and on behalf of all similarly situated persons, filed a 15-Count Amended Class Action Complaint against Defendants S.A. Gear Company, Inc. ("S.A. Gear"), Autozone, Inc., Autozone Parts, Inc., and Autozone Stores, Inc. (the "Autozone Defendants"), alleging Defendants manufactured, distributed, advertised, and/or sold defective timing chain tensioners.

Now pending before the Court is Plaintiffs' Motion for Class Certification (Doc. 122). Defendants filed Responses in opposition (Docs. 132, 134). For the following reasons, Plaintiffs' Motion for Class Certification is **DENIED**.

## <u>BACKGROUND</u>

This case involves an aftermarket timing chain tensioner ("the Part" or "Part 9422") for Chrysler/Dodge 2.7 L V-6 engines that S.A. Gear supplied to Autozone. Autozone has sold over

40,000 units of the Part since 2009.  Plaintiffs allege that the placement of an O-ring groove and the O-ring itself are too high on the tensioner and well outside of Chrysler/Dodge/OEM specifications.  Plaintiffs further allege that the Part does not fit properly in the Chrysler engine.

Part 9422 has been manufactured by three different manufactures (Doc. 135-5, at p. 29). Top Line has manufactured the Part since August 2013 (Doc. 135-6, at p. 73).  Autozone does not design or manufacture the Part (Doc. 135-4, ¶ 3).  Rather, S.A. Gear supplies the Part to Autozone under a vendor agreement.  *Id.*  Only Zan-Power Co., Ltd. ("Zan-Power"), manufactured the Part with the external O-ring in the location that Plaintiffs claim makes the Part defective (Doc. 133-8, at ¶ 5).  S.A. Gear purchased the part from Zan-Power from December 2010 to August 2013, and sold approximately 15,550 of the units manufactured by Zan-Power to various customers, including AutoZone (Doc. 133-8, at ¶ 6).  Autozone sells the Part under its Duralast brand to do-it-yourself ("DIY") customers at Autozone's retail locations and to commercial accounts (Doc. 135-4, at ¶¶ 7-10).

S.A. Gear can differentiate between Part 9422 as supplied by the three manufacturers based on characteristics such as the "coloration of the metal," (Doc. 135-6, at pp. 96, 102-04), and when the Part was shipped (Doc. 135-10).  The individual packaging does not identify the original manufacturer (Doc. 133-8, at ¶ 7).  It is not possible to identify a particular Part as having been manufactured by Zan-Power without physically inspecting and measuring the Part, which cannot be done while it is installed in an engine.  *Id.* at ¶ 8.

In 2010, Plaintiff Rhonda LeMaster purchased a 2002 Chrysler Sebring on Craigslist for $3,000 (Doc. 132-1, at pp. 12, 17).  Plaintiff Steve Williamson performed maintenance and repairs to the vehicle, including routine oil changes.  Williamson's first substantial work on the Sebring was replacing the water pump and the Part in October 2012 (Doc. 133-4, at p. 54).  He

decided to replace the Part while replacing the water pump because that was the recommended procedure. *Id.* at p. 71. Williamson purchased the Part from his local Autozone store. *Id.* at pp. 81-81.

At the time Williamson replaced the Part, the 10-year old Sebring had 156,000 miles on it. *Id.* at p. 55. Williamson replaced the timing chain tensioner without assessing the wear on the other timing components. *Id.* at pp. 70-71. After installing the Part, he drove the Sebring for approximately 170 miles. *Id.* at pp. 93-94.

During his deposition, Williamson testified that the car sounded okay at first, but he began noticing a tapping sound at idle. *Id.* He concluded the Part was not "holding pressure" because he was getting "chain chatter" when the car was at idle. *Id*. Williamson removed the Part, returned it to Autozone, and purchased the same replacement Part. *Id*. at pp. 93-94, 96. After installing the second tensioner, Williamson was able to drive approximately 400 miles before he began noticing issues.

In a letter to Autozone, Williamson stated that the two Parts he purchased and installed "failed in different manners." *Id.* at p. 68; Doc. 133-4, Ex. 3. He explained that he was able to drive for "two days and 170 miles" with the first Part and "5 days and over 400 miles" with the second Part. *Id.* He also reported that he was driving with the second Part when he heard a tapping sound that "gradually became more serious" before he pulled off the highway and the engine stalled. *Id*.

Williamson is unable to say whether the existing tensioner he removed from the Sebring's engine was the original tensioner that was sold with the car. *Id*. at p. 210. LeMaster has no knowledge about the repair or maintenance history of the vehicle prior to her purchasing it in 2010 (Doc. 133-1, at pp. 36-37). Neither Plaintiff researched the Part or visited Defendants'

respective websites before purchasing and installing it in the Sebring (Doc. 133-4, at p. 222, Doc. 133-1, at pp. 41-42).

LeMaster has no personal or independent knowledge about the alleged defect in the Part (Doc. 133-1, at p. 35). She was not involved in selecting the various auto parts or installing them in the Sebring in the fall of 2012. *Id.* at p. 51. She has never paid any money out of pocket for the repairs Plaintiffs claim are the result of the allegedly defective part. *Id.* at p. 62.

Autozone provides a 90 day warranty on the Part, under which it will refund the purchase price or replace the Part, "no questions asked" (Doc. 135-4, at ¶¶ 5-6). It does not track the reasons for returns made under its warranty. *Id.* at ¶¶ 11-13. Customers can also submit money damage claims to the vendor. *Id.* at ¶ 14.

Between 2009 and 2015, approximately 15 DIY customers, including Williamson, submitted money damage claims to S.A. Gear for the Part via the Autozone claim process (Doc. 135-3, at ¶ 7). During that same period, Autozone received 146 claims for the Part, of which 15 were from DIY unit sales (Doc. 135-3, at ¶ 16). The reasons for the claims varied from failure to activate the tensioner properly, to the tensioner being full of oil sludge or debris, to improper installation. *Id.* at ¶ 17. A search of the claim notes for Part 9422 received between 2009 and 2016 reveals no claims alleging a defect based on the O-ring placement. *Id.* at ¶ 20.

Along with their motion, Plaintiffs submitted two consumer complaints that were publicly posted on the portion of Advanced Auto Parts' website selling Part 9422:

> Defective batch cost me over $2,000.00
> PROS: None use OE
> CONS: Poor Quality
> BEST USES: Paper weight
> Comments about *S.A. Gear Tensioner Crank to Cam:* Many of these seemed to have been manufactured with the pressure o-ring groove in the wrong location causing o-ring to shear off. Timing chain guide failed from excess slack as well as eventual failure of water pump and entire chain. After three of these were

installed in a row I had a new batch ordered in to find that they were milled incorrectly.

PROS: Durable
CONS: Difficult to install
BEST USES: Everyday Driving Replacement
Comments about S.A. Gear Chain Tensioner Crank to Cam: Do not release plunger until it is installed in vehicle! Not even to check it. Engine must be set with all timing marks and front cover, valve covers, and intake off the engine to properly install. Failure to install properly WILL cause serious Internal Engine damage!

(Doc. 124-7). Plaintiffs also submitted a complaint from a mechanic that Williamson found on

an automotive technical forum:

SA Gear 9422 Timing Chain Tensioner
Engine: 2001 Dodge Intrepid SE 2.7L
. . .
Just wondering what others have experienced with this part. The o ring groove is farther away from the base on the SA tensioner than OE. The ring then reaches the inner edge of the head, allowing the ring to pop out of groove. SA Gear told me they know the design is different, but have had no problems. [2001 Dodge Intrepid SE, Engine/Propulsion Photo] [Fig. 1]
Curt Dickman
*Owner/Technician*
Grandpa's Garage
Wausau, Wisconsin, USA

(Doc. 124-8).

Plaintiffs move for class certification under Rules 23(a) and 23(b)(3) of the Federal Rules

of Civil Procedure, and seek to represent classes defined as follows:

*Nationwide Class:*

All persons in the United States who purchased from AutoZone Defendants' timing chain tensioner for use in the Chrysler 2.7L V-6 engine (also known as the Chrysler LH engine) at any time prior to the date of class certification. Excluded from the Class are any Defendant, any entity in which any Defendant has a controlling interest or which has a controlling interest in any Defendant, and any Defendant's legal representatives, assigns and successors. Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

*Illinois Class:*

> All domiciliary citizens of the state of Illinois who purchased from AutoZone Defendants' timing chain tensioner for use in the Chrysler 2.7L V-6 engine (also known as the Chrysler LH engine) at any time prior to the date of class certification. Excluded from the Class are any Defendant, any entity in which any Defendant has a controlling interest or which has a controlling interest in any Defendant, and any Defendant's legal representatives, assigns and successors. Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

## **LEGAL STANDARD**

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 493 (7th Cir. 2012) (quoting *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 131 S. Ct. 2541, 2548, 180 L. Ed. 2d 374 (2011)). To be certifiable, a class must first be "identifiable as a class," meaning that the class definitions must be definite enough that the class can be ascertained. *Oshana v. Coca–Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006); *see also Mullins v. Direct Dig., LLC*, 795 F.3d 654, 659–61 (7th Cir. 2015).

Assuming the class is sufficiently ascertainable, the plaintiff must then satisfy all four requirements of *F.R.C.P.* 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a). If all the prerequisites of Rule 23(a) are satisfied, then the proposed class must fall within one of the three categories described in Rule 23(b): "(1) a mandatory class action (either because of the risk of incompatible standards for the party opposing the class or because of the risk that the class adjudication would, as a practical matter, either dispose of the claims of non-parties or substantially impair their interests), (2) an action seeking final injunctive or declaratory relief, or (3) a case in which the common questions predominate and class treatment is superior." *Spano v. Boeing Co.*, 633 F.3d 574, 583 (7th Cir. 2011).

A party seeking to certify a class may not merely rest on his or her pleadings. Rather, "[a] party seeking class certification must affirmatively demonstrate compliance with the Rule - that is, [they] must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart*, 131 S. Ct. at 2551 (emphasis in original). "[A]ctual, not presumed conformance with Rule 23(a) remains . . . indispensable." *Gen. Tel. Co. of SW v. Falcon*, 457 U.S. 147, 160 (1982).

While district courts have broad discretion when determining whether a proposed class satisfies Rule 23, they are expected to engage in a "rigorous analysis" to determine if the prerequisites of Rule 23(a) have been satisfied. *Howland v. First Am. Title Ins. Co.*, 672 F.3d 525, 528 (7th Cir. 2012); *Wal-Mart*, 131 S. Ct. at 2251 (quoting *Falcon*, 457 U.S. at 161). When the court conducts this "rigorous analysis," it will frequently "entail overlap with the merits of the plaintiff's underlying claim." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33–34, 133 S. Ct. 1426, 1432, 185 L. Ed. 2d 515 (2013); *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d at 493. This is because "class determination generally involves considerations that are meshed in the factual and legal issues comprising the plaintiff's cause of action." *Comcast*, 133 S. Ct. at 1432.

## DISCUSSION

### Identifiable Class

In order to establish that a class is ascertainable, a plaintiff must offer a class definition that is (1) precise, (2) defined by objective criteria, and (3) not defined in terms of success on the merits. *Mullins,* 795 F.3d at 659–60. A class that is defined too vaguely fails to satisfy the "clear definition" component. *Id*. at 660. The definition must identify a particular group, harmed during a particular time frame, in a particular location, in a particular way. *Id*.

The classes proposed by Plaintiffs consist of individuals "…who purchased from Autozone Defendants' timing chain tensioner[s] for use in the Chrysler 2.7L-V-6 engine at any

time prior to the date of class certification." The proposed class definitions don't identify a specific harm suffered during a particular time frame or in a particular way. In fact, class membership requires nothing more than the purchase of Part 9422. As such, the definitions are overbroad – they fail to create class membership that is contingent on any objectively ascertainable factors.

An overbroad class definition is problematic, in part, because it may include individuals who lack standing to maintain the action on their own behalf. *Oshana*, 472 F.3d at 514 (affirming the district court's ruling that the proposed class was not sufficiently definite, and stating that the class "could include millions who were not deceived and thus have no grievance under the ICFA"); *see also Messner*, 669 F.3d at 824 ("If ... a class is defined so broadly as to include a great number of members who for some reason could not have been harmed by the defendant's allegedly unlawful conduct, the class is defined too broadly to permit certification.").

Such is the case here. While Plaintiffs seek recourse for those harmed by the alleged defect in Part 9422 and misrepresentations made by Defendants, the proposed class definitions undoubtedly include individuals who have suffered no injury at all, and who therefore lack any identifiable basis for standing. What's more, the definitions would actually exclude LeMasters from the class, as she never purchased Part 9422 from Autozone. Thus, certification of the proposed classes is improper. Although the Court could end its analysis based solely on this issue, it will examine whether the requirements of Rule 23(a) have been satisfied.

## **Rule 23(a)**

"All class actions, no matter what type, must meet the four explicit requirements of Federal Rule of Civil Procedure 23(a): (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class

(commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy of representation)." *Chicago Teachers Union, Local No. 1 v. Board of Educ. of City of Chicago*, 797 F.3d 426, 433 (7th Cir. 2015). As discussed below, Plaintiffs' proposed class action fails with respect to two of these requirements.

## Numerosity

In order to meet the numerosity requirement, Plaintiffs must establish that there are a sufficient number of class members that joinder would be impractical. "Although there is no 'bright line' test for numerosity, a class of forty is generally sufficient." *Pruitt v. City of Chicago,* 472 F.3d 925, 926 (7th Cir. 2006). A plaintiff is not required to specify the exact number of persons in the class nor is a plaintiff required to establish the exact identity of the class members. *See Marcial v. Coronet Ins. Co.,* 880 F.2d 954, 957 (7th Cir. 1989) (citation omitted). Rather, "[a] class can be certified without determination of its size, so long as it's reasonable to believe it large enough to make joinder impracticable and thus justify a class action suit." *Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities Inc.,* 747 F.3d 489, 492 (7th Cir. 2014).

Plaintiffs seek to certify nationwide and Illinois classes consisting of all citizens who purchased Part 9422 from Autozone for usage in the Chrysler 2.7L V-6 engine. S.A. Gear sold Autozone over 40,000 units of the Part. Autozone, in turn, sold over 30,000 units of Part 9422 to consumers. As such, numerosity is satisfied.

## Commonality

Rule 23(a)(2) requires plaintiffs to establish the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality demands that class members

"suffered the same injury," not "merely that they have all suffered a violation of the same provision of law." *Wal-Mart*, 131 S. Ct. at 2551 (citation omitted). Ordinarily, "[w]here the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Suchanek v Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014). However, "[w]hat matters to class certification ... is not the raising of common 'questions' – even in droves – but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Chi. Teachers Union, Local No. 1*, 797 F.3d at 434 (quoting *Wal-Mart,* 131 S. Ct. at 2551). In other words, a common question exists where the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Mullins,* 795 F.3d at 679 (quoting *Wal-Mart*, 131 S. Ct. at 2551).

Plaintiffs seek to certify a nationwide class and an Illinois class based on state law express and implied warranty claims, the Illinois Consumer Fraud Act ("ICFA"), common law fraud claims, strict liability claims, and unjust enrichment. Plaintiffs allege an "overarching scheme whereby Defendants sold Part 9422 falsely claiming that it met Chrysler/Dodge/OEM specifications and was suitable for use in the Engine." They contend that "broadly speaking, common issues include whether the Part is defective and whether Defendants' statements regarding the part were misleading and deceptive, or tended to mislead and deceive." Plaintiffs further assert that additional common issues which would predominate in any lawsuit involving the Part's alleged defects include: (1) consumers purchased the Part for installation in the Chrysler/Dodge 2.7L V6 Engine; (2) the technical specifications for the Part and Defendants' representations regarding the specifications and suitability; (3) the packaging contained the same alleged false labeling that the Part was engineered to meet or exceed OE performance; (4)

Defendants' knowledge of alleged deception; (5) the design or manufacturing of the Part is universal; and (6) numerous common issues involving Defendants' quality assurance processes, claims processes, and warranty resolution are present in this case.

Defendants argue that commonality does not derive from the fact that the Part has a "universal purpose," or "universal technical specifications and suitability issues." They maintain that Plaintiffs have failed to establish commonality because the uncontroverted evidence establishes that any alleged failure of the Part could be caused by multiple or unrelated factors, including, but not limited to, engine age and wear, and improper installation or failure to replace other wear parts such as the timing chain and gears. In support, they point to Williamson's testimony that the two tensioners he purchased failed in different ways.

Weighing individual issues, such as those identified by Defendants, is an appropriate approach to analyzing predominance under Rule 23(b)(3). By contrast, a single common question is sufficient to satisfy the Rule 23(a)(2) commonality requirement. *Wal-Mart,* 131 S. Ct. at 2556; *Suchanek,* 764 F.3d at 756 ("Neither Rule 23 nor any gloss that decided cases have added to it requires that every question be common. It is routine in class actions to have a final phase in which individualized proof must be submitted."). Whether the Part's packaging was false or misleading is relevant to the asserted claims and is capable of class-wide resolution. *See Suchanek,* 764 F.3d at 758 (question of "whether packaging was likely to mislead a reasonable consumer" satisfies the commonality requirement); *Pella Corp. v. Saltzman,* 606 F.3d 391, 394 (7th Cir. 2010) (common questions whether product sold to all class members was inherently defective, whether defendant knew of this defect, and whether the product warranty covered the defect). Thus, the commonality requirement is satisfied.

## Typicality

For typicality, "there must be enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Spano*, 633 F.3d at 586. The typicality requirement addresses the separate concerns that (1) the representative's claim may fail on unique grounds, dooming meritorious claims of absent class members; or (2) the representative's claims may prevail on unique grounds, and the representative may therefore fail to adequately present alternative grounds under which the unnamed class members could prevail on their own claims. *See CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 724 (7th Cir. 2011).

Typicality is satisfied if the named representative's claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and ... [the] claims are based on the same legal theory." *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir. 1992). As such, typicality and adequacy inquiries often overlap. *See Robinson v. Sheriff of Cook County*, 167 F.3d 1155, 1157 (7th Cir. 1999) (Holding that if a plaintiff's claim is atypical, he is not likely to be an adequate representative). In this case, Plaintiffs have failed to demonstrate that they meet the typicality requirement. Specifically, Plaintiffs have not shown – and based on the facts in the record, cannot show – that their claims arise out of the same event or course of conduct as all putative class members.

In *Suchanek*, the Seventh Circuit concluded that the named representatives' interests and legal claims aligned with those of the putative class. This was so because the named plaintiffs "proffered evidence to show the overwhelmingly negative response to the [coffee] product, the flood of complaints that followed the introduction of [the product] and numerous surveys that shed light on the preferences of [consumers] for premium (freshly brewed) coffee." 764 F.3d at

758.  But the *Suchanek* Court also noted that certification was properly denied where the named plaintiffs "appeared to be the only person[s]" in a "million-plus class that believed [the] defendant deceived consumers by using different formulae in found and bottled soda products." *Id.* (citing *Oshana*, 472 F.3d at 514).  Similarly in *Thorogood v. Sears, Roebuck & Co.,* 547 F.3d 742, 747 (7th Cir. 2008), the Seventh Circuit reversed certification because there was no "evidence that anyone in the 500,000 person class other than Thorogood believed the allegations" that a dryer's stainless steel drum was defective.  *Id.*

This case is distinguishable from *Suchanek* and similar to *Thorogood*.  Plaintiffs have not identified a significant or meaningful number of complaints about the alleged defect, or provided expert evidence, surveys, or third-party analyses demonstrating any other consumer's belief that the Part was defective or that representations about the Part were misleading.  *See Suchanek*, 764 F.3d at 758; *see also Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 798 (7th Cir. 2013) (noting "many thousands of complaints of bad odors by the machines' owners"); *Pella Corp.,* 606 F.3d at 394 (noting that class counsel had been contacted "by over 350 consumers").  Instead, they rely on three complaints; two from consumers who purchased the Part from Advance Auto, not AutoZone, and one from a mechanic with no alleged connection to Autozone.  One consumer discusses the placement of the O-ring, but doesn't suggest that he was deceived or confused by any representation about the product.  The other consumer does not mention the O-ring, but notes that the Part is hard to install and must be installed correctly to avoid engine failure.  As was the case with the failed classes in *Thorogood* and *Oshana*, there is no evidence that anyone other than the named Plaintiffs believes the Part is defective.  Typicality has not been satisfied.

**Adequacy**

As for adequacy, a representative party must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "[A]dequacy of representation is composed of two parts: the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest of the class members." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993) (quotation omitted).

Plaintiffs' counsel have vigorously prosecuted this action and are well-versed in class action practice. The Court has no reason to believe they are unqualified or that they will not fairly and adequately represent the interests of the class. The Court will therefore only address whether the named Plaintiffs are adequate representatives.

The adequacy requirement is satisfied when the named representatives have "a sufficient interest in the outcome of the case to ensure vigorous advocacy" and "[do] not have interests antagonistic to those of the class." *Saltzman v. Pella Corp.*, 257 F.R.D. 471, 480 (N.D.Ill. 2009) *aff'd*, 606 F.3d 391 (7th Cir. 2010). A person whose claim is idiosyncratic or possibly unique is an unsuitable class representative. *See Suchanek*, 764 F.3d at 758. Because the record suggests that few, if any other potential class members share Plaintiffs' grievances about the Part, the Court finds that Plaintiffs' claims are idiosyncratic to the class. Thus, they are not proper class representatives.

## Rule 23(b)

Because Plaintiffs have failed to fully satisfy the requirements of Rule 23(a), the Court need not address whether they are entitled to equitable relief under Rule 23(b)(2), whether under Rule 23(b)(3) common issues of law and fact predominate over individualized issue or whether a class action is superior to other vehicles available for adjudicating this controversy.

## Conclusion

For the foregoing reasons, Plaintiffs' Motion for Class Certification (Doc. 122) is **DENIED.** Plaintiffs are to proceed as individuals.

**IT IS SO ORDERED.**

**DATED:  June 7, 2018**

**s/ Staci M. Yandle**
**STACI M. YANDLE**
**United States District Judge**
